[No. 3588. Decided August 25, 1900.]

LILLIE M. TROWBRIDGE, *Appellant, v.* FRED M. SPINNING *et al., Respondents.*

ACTION ON FOREIGN JUDGMENT—JURISDICTION OF COURT RENDERING JUDGMENT—JUDICIAL NOTICE.

Where an action is brought in this state upon a judgment for alimony rendered in another state, the courts of this state will take judicial notice of the local laws of such state, and that they confer jurisdiction upon the court from which the record comes to render the judgment sued upon.

SAME—JURISDICTIONAL FACTS—PLEADING.

In an action upon a judgment of another state, rendered by a court of general jurisdiction, it is unnecessary to allege jurisdictional facts, since any want of jurisdicition affecting the validity of the judgment is a matter to be set up by answer.

JUDGMENTS—AWARD OF ALIMONY IN GROSS—FINALITY OF DECREE.

A judgment in divorce proceedings awarding alimony in gross, which, by statute, is made a general lien on the realty of the judgment debtor, as in the case of other judgments, constitutes a final judgment of that state, although the court rendering it may, on the application of either party, make such alteration from time to time as to the· allowance of alimony as may be proper, to which the courts of other states are required, by the constitution of the United States and the act of congress pursuant thereto, to give full faith and credit.

GARNISHMENT—GARNISHEE'S CONTROL OF PROPERTY—SAFE DEPOSIT BOXES.

A corporation which conducts a safe deposit vault business by renting to individuals boxes in the vault which can only be opened by the use of two keys—one a master's key, in the possession of the corporation and the other a private key, in the possession of the renter of the box—is subject to garnishment in an action against the latter, under Bal. Code, § 5404, which provides that "should it appear from the garnishee's answer or otherwise that the garnishee has in his possession or under his control, or had when the writ was served, any personal property or effects of the defendant liable to execution, the court shall render a decree requiring the garnishee to deliver up to the sheriff on demand such personal property or effects or so much of them as may be necessary to satisfy the plaintiff's claim.

Appeal from Superior Court, King County.—Hon. E. D. Benson, Judge. Reversed.

E. F. Blaine and Tucker & Hyland, for appellant.

That appellant's form of action is the proper one upon a decree awarding alimony in gross, where an action is brought upon the same in a sister state, we cite *Kunze v. Kunze,* 68 N. W. 391 (59 Am. St. Rep. 857).

That the judgment rendered in the state of Missouri was a final judgment upon which an action at any time might be maintained in a sister state, we cite the following authorities, all being decisions rendered in divorce

4—23 WASH.

proceedings in which alimony had been awarded, and, upon judgments so awarding it, actions were commenced and successfully prosecuted in sister states: *Barber v. Barber,* 21 How. 582 (16 L. ed. 226); *Allen v. Allen,* 100 Mass. 373; *Howard v. Howard,* 15 Mass. 196; *Rogers v. Rogers.* 15 B. Mon. 364; *Bullock v. Bullock,* 31 Atl. 1024 (46 Am. St. Rep. 528, 27 L. R. A. 213); *Hansford v. Van Auken,* 79 Ind. 302; *Becknell v. Becknell,* 110 Ind. 42 (10 'N. E. 414); *Brisbane v. Dobson,* 50 Mo. App. 170; *Dow v. Blake,* 148 Ill. 76 (39 Am. St. Rep. 156); *Bennett v. Bennett,* 1 Deady, 299. Courts of states having statutes similar to the statute of Missouri have held judgments like the one in the case at bar to be final. It has also been held that an action on a judgment of a court of competent jurisdiction may be maintained in another state, notwithstanding an appeal has been taken and is still pending. *Shaw v. Shaw,* 59 Ill. App. 268; *Plaster v. Plaster,* 47 Ill. 290; *Beard v. Beard,* 78 N. W. 255; *Sammis v. Medbury,* 14 R. I. 214; *Olney v. Watts,* 43 Ohio St. 500 (3 N. E. 354); *Smith v. Smith,* 45 Ala. 264; *Webster v. Webster.* 64 Wis. 438; *Howell v. Howell,* 104 Cal. 45 (43 Am. St. Rep. 70); *Bennett v. Bennett,* 3 Fed. Cas. No. 1318; *Hardin v. Hardin,* 38 Tex. 616; *Taylor v. Shew,* 39 Cal. 536 (2 Am. Rep. 478); *Fries v. Fries,* 1 McArthur (D. C.) 291. A decree in gross becomes the absolute property of the party in whose favor it is granted. *Miller v. Clark,* 23 Ind. 370; *Dinet v. Eigenmann,* 80 Ill. 274; *Petersine v. Thomas,* 28 Ohio St. 596.

Parties controlling safe deposit vaults are bailees of all property in their vaults belonging to third parties renting boxes therein. *Lockwood v. Manhattan Storage & Warehouse Co.,* 50 N. Y. Supp. 974; *Roberts v. Stuyvesant Safe Deposit Co.,* 123 N. Y. 57 (25 N. E. 294, 20 Am. St. Rep. 718, 9 L. R. A. 438); 15 Banking

Law Jour. 559; *Hooper v. Day,* 19 Me. 56 (36 Am. Dec. 734); *Burlingame v. Bell,* 16 Mass. 318; *United States v. Graff,* 67 Barb. 310; 48 Cent. Law Jour. 207.

*John G. Gray* and *John N. Perkins,* for respondent Spinning.

"Jurisdiction over the subject of divorce is a special authority not recognized by the common law, and its proceedings in relation to it stand on the same footing with those of courts of limited and inferior jurisdiction; so that its powers in the case must be shown, and appear to have been strictly pursued." *Kelley v. Kelley,* 161 Mass. 111 (25 L. R. A. 806, 42 Am. St. Rep. 389); *Commonwealth v. Blood,* 97 Mass. 538; *Northcut v. Lemery,* 8 Ore. 316; Van Fleet, Collateral Attack, § 840.

A decree against the plaintiff on a cross bill without notice is void. Van Fleet, Collateral Attack, § 495, and cases cited; Wade, Notice, § 1083.

"No judgment is to be given any greater effect elsewhere than it had in the jurisdiction in which it originated." Freeman, Judgments, § 221; *Suydam v. Barber,* 18 N. Y. 468 (75 Am. Dec. 254); *Wood v. Watkinson,* 17 Conn. 500 (44 Am. Dec. 562); *Rogers v. Coleman,* 3 Am. Dec. 733; 2 Black, Judgments, § 861.

"An alimony decree has in most of our states only a sort of interlocutory force, is liable to be varied from time to time by the court which pronounced it and is enforceable only on process issuing from such court." 2 Bishop, Marriage, Div. and Sep., § 847; Van Fleet, Collateral Attack, § 649; Brown, Divorce, p. 278. And generally, on the subject of foreign decrees for alimony, see *Battey v. Holbrook,* 11 Gray, 212; *Barber v. Barber,* 2 Pin. 297; *Van Buskirk v. Mulock,* 18 N. J. Law, 184; *Stillman v. Stillman,* 99 Ill. 196 (39 Am. Rep. 21).

*George E. de Steiguer,* for respondent National Bank of Commerce:

The question arises whether the bank leasing the safe deposit box has such control or possession of the contents thereof as will render it subject to a writ of garnishment. The bank has no possession, for two reasons: (1) Possession implies exclusive enjoyment. *Sullivan v. Sullivan,* 66 N. Y. 37; (2) there is not that element of *intent* necessary to constitute possession in the bank. Bouvier's Law Dict., title, "Possession." Mere physical power to interfere with the rightful owner is not "control"; and certainly could not be considered control, in a legal sense, where that physical power is exercised, not by virtue of any right, but in defiance of right. *Bank of Monroe v. Gifford,* 44 N. W. 558.

The only case we have found in which the right of garnishment of a safe deposit vault has been considered is *Gregg v. Nilson,* 8 Phila. 191, 1 Legal Gazette, 128 (cited and discussed in Drake on Attachments (5th ed., § 451a); 9 Harvard Law Rev. 136. A garnishee who has not the right nor the power (except by committing trespass) to take possession of the defendant's property is not under obligation to deny the defendant access thereto until the determination of the action, in order that an execution may be made effective. *Andrews v. Ludlow,* 5 Pick. 28; *Smalley v. Miller,* 32 N. W. 187; *Drake v. Catlin,* 18 Wash. 316; *Wooding v. Puget Sound National Bank,* 11 Wash. 527.

The opinion of the court was delivered by

WHITE, J.—The amended complaint in this action, omitting the formal parts, is as follows:

"That at all the times herein mentioned the circuit court of the city of St. Louis, in the state of Missouri, was, and ever since has been, and now is, a court of general jurisdiction over matters in equity and law, duly organized and existing under and by virtue of the laws of said state. That on the 25th day of June, 1895, the de—

fendant above named, Fred M. Spinning, commenced an
action in said circuit court of the city of St. Louis, as
plaintiff, against Lillie M. Spinning, she being the plain-
tiff here who at that time was the wife of said Fred M.
Spinning, as defendant, by filing his petition therein,
which said action was entitled as follows, to-wit: 'In the
circuit court of the city of St. Louis, October, 1895,
Fred M. Spinning, plaintiff, v. Lillie M. Spinning, de-
fendant.' That upon the filing of said petition, the clerk
of said court on the 25th day of June, 1895, duly issued
a summons, commanding the defendant therein, who is
the plaintiff herein, to appear before the judges of said
circuit court on the first day of the next term thereof,
to be held in the city of St. Louis at the court house in
said city, on the first Monday of October, next following,
the day of the issuance thereof, then and there to answer
the complaint of Fred M. Spinning as set forth, a copy
of which was attached to said summons, and said sum-
mons was duly sealed with the seal of said court and at-
tested by the clerk on said day, and thereafter was duly
served upon the defendant herein named, personally, at
the city of St. Louis, in the state aforesaid, by the sheriff
of said county, by delivering a copy thereof with a copy
of said petition to said defendant, personally, she being
the plaintiff herein.

"That after the service of process upon said defend-
ant, the plaintiff herein, said Lillie M. Trowbridge, ap-
peared by her attorney, Wm. McNamee, and in person
and thereafter such proceedings were had and done there-
in, that said Lillie M. Trowbridge, then Lillie M. Spin-
ning, filed her answer and cross-complaint in said action
against the said Fred M. Spinning, wherein she alleges
that she was the injured person, praying among other
things, that she was entitled to a decree of divorce and for
her costs and alimony; that thereafter and on the 29th
day of January, 1896, such other and further proceed-
ings were had in said action, that a trial thereof was had
on said day, wherein and whereby said court ordered
decreed and rendered judgment therein against the said
Fred M. Spinning, granting the defendant therein a com-
plete decree of divorce, she being the plaintiff here, to-

gether with judgment against said Fred M. Spinning for the sum of $5,000 as and for alimony in gross, and further ordered, adjudged and decreed that said Fred M. Spinning pay the costs of said proceeding, and that execution issue thereof; and that said decree was duly made, entered, enrolled and docketed in said court dissolving the bonds of matrimony and rendering judgment as aforesaid, and that no part of said judgment and decree has ever been paid.

"That under and by virtue of the provisions of the revised statutes of the state of Missouri, chapt. 28, page 360 of volume 1, for the year 1879, such judgment and decree rendered as aforesaid has the force and effect of a judgment at law for the payment of money. That such is the construction thereof and the force and effect to be given to the same, as determined by the supreme court of said state of Missouri, and such is the law of said state. That by reason thereof plaintiff is advised and believes, and therefore alleges, the fact to be, and that under and by virtue of the constitution of the United States, section 1, article 4, she has a good right to bring her cause of action as aforesaid in the courts of the state of Washington, and to have and recover of the said defendant the sum of $5,000 awarded to her as aforesaid, and that the courts of the state of Washington will give the same force and effect to said decree as is given thereto in the state of Missouri.

"Plaintiff hereby refers to sections 2179, 2180, 2184, 2185, of volume 1, Revised Statutes of the State of Missouri, 1879, and attaches hereto full and complete copies of said sections aforesaid, the same being marked as exhibit A, and made a part and parcel thereof, to all intents and purposes as fully as though copied at length herein."

The sections of the Revised Statutes of the State of Missouri referred to in section 4 of the complaint are as follows:

"Sec. 2179. When a divorce shall be adjudged, the court shall make such order touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as from the cir-

cumstances of the parties and the nature of the case shall be reasonable, and when the wife is plaintiff, may order the defendant to give security for such alimony and maintenance; and upon his neglect to give the security required of him, or upon default of himself and his securities, if any there be, to pay or provide such alimony and maintenance, may award an execution for the collection thereof or enforce the performance of the judgment, or order by sequestration of property, or by such other lawful ways and means as is according to the practice of the court. The court, on the application of either party, may make such alteration from time to time as to the allowance of alimony and maintenance as may be proper, and the court may decree alimony pending the suit for divorce in all cases where the same would be just, whether the wife be plaintiff or defendant, and enforce such order in the manner provided by law in other cases.

"Sec. 2180. Upon a decree of divorce in favor of the wife, the court may in its discretion decree alimony in gross or from year to year. When alimony is decreed in gross such decree shall be a general lien on the realty of the party against whom the decree may be rendered as in the case of other judgments. When a decree is for alimony from year to year, such decree shall not be a lien on the realty as aforesaid, but an execution in the hands of the proper officer, issued for the purpose of enforcing such decree, shall constitute a lien on the real and personal property of the defendant in such execution so long as the same shall lawfully remain in the possession of said officer unsatisfied.

"Sec. 2184. No final judgment or order rendered in cases arising under this chapter shall be reversed, annulled or modified in the supreme or any other court by appeal or writ of error, unless such appeal shall have been granted during the term of court at which the judgment or order appealed from was rendered, or unless such writ of error shall have been issued within sixty days after the order was made or judgment was rendered.

"Sec. 2185. No petition for review of any judgment for divorce in any case arising under this chapter shall

be allowed, any law or statute to the contrary notwithstanding; but there may be a review of any order or judgment touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as in other cases."

The prayer of the complaint was for judgment against the defendant Fred M. Spinning for the sum of $5,000, with interest thereon from the 26th day of January, 1896, at the rate of six per cent. per annum, and for costs, etc. The respondent Spinning demurred to this complaint, on the ground that the same did not state facts sufficient to constitute a cause of action against him. This demurrer, upon hearing, was sustained, and judgment was entered dismissing the action. On September 6, 1899, at the time the plaintiff filed her original complaint in the superior court of King county, state of Washington, a writ of garnishment was issued and served upon the Washington National Bank, First National Bank, National Bank of Commerce, Seattle Safe Deposit Vaults, Incorporated—all of the city of Seattle—as garnishee defendants. All of the garnishee defendants appeared, and the Seattle Safe Deposit Vaults, Incorporated, and the Washington National Bank denied generally, and these answers were controverted. The First National Bank admitted that it had on deposit the sum of $266.19 to the credit of the respondent. The garnishee defendant the National Bank of Commerce answered, stating that the respondent had in its vaults a safe deposit box, to which there was a private and a master's key, the private key being in the possession of the respondent and the master's key in the possession of the garnishee defendant; and to open said box it is necessary, first, for the master's key to be used; second, for the private key to be used; that the contents of the box were unknown to the garnishee defendant. To the vault there was a vault door, locked

by a time combination, which was under the exclusive charge of the garnishee defendant.

Upon the issues formed by the answer of the garnishee defendant the National Bank of Commerce, proof was taken; and the court made findings of fact and conclusions of law, and discharged said garnishee defendant, and to said conclusions of law the appellant excepts. This order was made prior to the sustaining of the demurrer to the amended complaint. At the time of the sustaining of the demurrer to the amended complaint an order was made discharging all of the garnishee defendants. From said order and the sustaining of said demurrer to the amended complaint and the judgment dismissing said action, this appeal is taken. The findings of fact and conclusions of law in relation to the garnishment against the National Bank of Commerce are as follows:

"That on the 14th day of October, 1898, said garnishee rented of said defendant, for one year, a compartment and box in the Safety Deposit Vaults of the said garnishee; and the time of said renting gave to said defendant a receipt, of which the following is a copy, to-wit:

Seattle, Wash., Oct. 14, 1898.
'No. 531.

Received of Fred M. Spinning the sum of Three and 25-100 dollars in payment of rent for Safety Deposit Box No. 80 from Oct. 14, 1898, to Oct. 14, 1899.

The National Bank of Commerce,
By W. H. Wright.
'Read agreement on Back.'

On the back of which receipt was the following indorsement, to-wit: 'Read this agreement.'

"It is understood and agreed by and between the National Bank of Commerce and the lessee that in case of the loss of the key of said box, it will be replaced only at the expense of the lessee, and the National Bank of Commerce shall not be responsible in any way for such

loss. It is further understood and agreed by and between the National Bank of Commerce that said bank may refuse access to said box to any agent of the lessee not regularly designated by an instrument in writing filed with the Bank."

2. That the said defendant, ever since the said 14th day of October, 1898, has continued to hold said box and compartment under said contract and lease.

3. That said box is an ordinary tin box enclosed within said compartment, and said compartment is closed with a door fitted with a lock. At the time of renting said box and compartment, the garnishee delivered to the defendant two duplicate keys. The method of opening said box and compartment is as follows: Said garnishee, through one of its employees, turns in said lock what is known as a 'master's key,' after which the keys furnished to the defendant will unlock the lock of said compartment and permit the same to be opened. Said 'master's key' will not unlock said lock. Said garnishee did not retain, and has not now, and has not at any time, since renting said box and compartment had any key whatsoever with which to open the said box or compartment, and has not now, and has not at any time, since renting said box and compartment, had any means of opening or obtaining access to said compartment or box.

4. Said master's key is not used for the purpose of giving said garnishee access to said box or compartment, but as a check on fraud and imposture, and to prevent unauthorized persons having access thereto.

5. Said garnishee has no information or knowledge as to what, if any, the contents of said box and compartment is, and no evidence has been introduced as to what such contents are, or whether said box contains anything, save and except to the effect that the garnishee has been informed by the defendant that there are in said box papers belonging to other persons than the defendant.

6. Said garnishee has no means of ascertaining the contents of said box and compartment, and has no information, and is unable to ascertain whether or not said box and compartment contain anything subject to execution, attachment, garnishment or anything whatsoever.

7.   That the sum of fifty dollars ($50) is a reasonable sum to be allowed the garnishee as an attorney's fee.

8.   At the time of the service of said writ said garnishee was not, and has not since been, indebted to defendant, nor has it had in its possession, or under its control, any property or effects of defendant except as above set forth.

### CONCLUSIONS OF LAW.

From the foregoing facts, the court concludes, as a matter of law, that the garnishee, the National Bank of Commerce, is entitled to judgment discharging it upon its said answer, and for its costs against the plaintiff, including a reasonable attorney's fee, to-wit: the sum of fifty dollars ($50).

The errors assigned are as follows:

"1st.   The court erred in sustaining the demurrer to the amended complaint.

2d.   The court erred in discharging the garnishee defendant, the National Bank of Commerce.

3d.   The court erred in discharging the other garnishee defendants."

The first point urged by the respondent against this complaint is that the authority of the circuit court of the city of St. Louis in proceedings for divorce and alimony is not shown or alleged in this complaint. It is alleged that the circuit court of the city of St. Louis at all the times mentioned in the complaint was, and is, a court of general jurisdiction over matters in equity and law, duly organized and existing under and by virtue of the laws of Missouri. "Questions of divorce and alimony," says the learned counsel for the respondent Spinning, "are regulated by statutory provisions only, and the jurisdiction of courts over them cannot be extended beyond the statute authority. Proceedings in such matters are not according to the course of the common law, and there is no presumption in favor of the regularity of courts of general jurisdiction in such cases."

Where a question arises under that part of the constitution of the United States and the act of congress which requires full faith and credit to be given in each state to the public acts, records and judicial proceedings of every other state, our courts will take judicial notice of the local laws of the state from which the record comes. *Ohio v. Hinchman,* 27 Pa. St. 483; *Paine v. Schenectady Ins. Co.,* 11 R. I. 415; *Rae v. Hulbert,* 17 Ill. 576.

The supreme court of Pennsylvania, where the question was as to the jurisdiction of the probate courts of Ohio, in *Ohio v. Hinchman, supra,* says:

"The questions before us arise under the constitution and laws of the United States. Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, says the federal constitution, and the act of congress of 26th May, 1790, providing for the mode of authenticating the records and judicial proceedings of the state courts, declares that 'the records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken.'

"A judgment of this court, adverse to the right arising out of the federal constitution and legislation, would be reviewable in the supreme court of the United States, and there the states of the confederacy are not regarded as foreign states, whose laws and usages must be proved, but as domestic institutions, whose laws are to be noticed without pleading or proof. It would be a very imperfect and discordant administration for the court of original jurisdiction to adopt one rule of decision, while the court of final resort was governed by another; and hence it follows, that in questions of this sort, we should take notice of the local laws of a sister state in the same manner the supreme court of the United States would do on a writ of error to our judgment. 7 Cranch, 408; Id. 481; 3 Wheat. 234; Baxley v. Linah, 4 Harris, 243."

The supreme court of Illinois, in *Rae v. Hulbert,*
*supra,* says:

"While for many, if not for most, purposes, the sev-
eral states of the Union are, as to each other, considered
and treated as foreign states, yet it is not strictly so as
to the judgments rendered by their several courts. I will
not quote from the constitution and laws of the federal
government, but from the opinion of this court in the
case of *Welch v. Sykes,* 3 Gilman, 199. It is there said,
'Under the constitution of the United States, and laws
made in pursuance thereof, the judgments *in personam*
of the various states are placed on the footing of domes-
tic judgments, and they are to receive the same credit
and effect, when sought to be enforced in different states,
as they, by law or usage, have, in the particular states
where rendered.' We are then to treat this judgment,
or give it the same effect, as if rendered by one of our
own courts, or as if this were a proceeding in New York.

"We do not hesitate to declare that it is our duty to
take notice that the supreme court of New York had
jurisdiction of the subject-matter; and the same pre-
sumptions arise in favor of the jurisdiction of the per-
son, and of the regularity of the proceeding, that would
arise upon a domestic judgment. How far those pre-
sumptions arise in favor of the jurisdiction of the per-
son, it is not necessary now to discuss particularly, for
that is a question rather of evidence than of pleading.
Though it may be necessary, when used as evidence,
that the record should show such facts as are necessary
to give the court jurisdiction of the person of the defend-
ant, or, at least, as raise a presumption of jurisdiction,
yet it is not necessary that such facts should be set out in
the pleading. It is only necessary to aver that, by the
consideration of the court, a judgment was rendered
against the defendant. The implication is, that it was a
valid judgment, and that is sufficient to lay the founda-
tion for the proof of every fact necessary to show that
it was a valid judgment."

The supreme court of Wisconsin, in *Kunze v. Kunze,*
94 Wis. 54 (68 N. W. 391, 59 Am. St. Rep. 857), which

was an action to recover alimony adjudged to the plaintiff in a divorce action brought in Illinois, says:

"This is an action brought to recover alimony adjudged to the plaintiff in a divorce action heretofore brought in Illinois. It appears by the complaint that the court in which the divorce action was brought, i. e., the circuit court of Cook county, Illinois, was a court of general jurisdiction, as its name indicates; hence it was unnecessary to allege any jurisdictional facts. *Jarvis v. Robinson*, 21 Wis. 523. The allegation that the judgment was rendered in that court, and that it was afterwards duly amended, are sufficient in the first instance. From these facts jurisdiction is presumed. If, in fact, there was any want of jurisdiction, it is a fact to be set up by answer. *Jarvis v. Robinson, supra.*"

For the reasons given in these decisions, which we think are sound, we take judicial notice that the circuit court of the city of St. Louis had jurisdiction to render the judgment alleged.

It is further objected, that the appellant alleges that she filed her answer and cross-complaint, but she fails to allege that the same was served. This objection is also answered in the quotation from the cases of *Rae v. Hulbert, supra,* and *Kunze v. Kunze, supra.* Besides, we take judicial notice that, under the laws of Missouri, in all suits for divorce the defendant may set up in defense to the action in the answer any facts which, if proved, would entitle the defendant to a divorce, and in such answer pray to be divorced from the plaintiff, and on the hearing of the cause the court can grant the defendant a divorce, if satisfied the defendant was the injured party. 1 Rev. Stat. Missouri, 1879, § 2176. The complaint sufficiently alleges that she appeared in the action and filed her answer, alleging she was the injured person, praying for the decree, etc., and that such proceedings in the action were had that she obtained the judgment

alleged. Whether the answer was served or not is immaterial. That is a mere matter of practice. It was filed, and the allegations of the complaint are sufficient to admit proof by exemplified copy of the record of the issues tried, and upon which the judgment was rendered.

The principal contention of the respondent Spinning is that the judgment of $5,000, as for alimony in gross, given by the circuit court of the city of St. Louis, is not a final judgment, because the statute of Missouri provides that the court, on the application of either party, may make such alteration from time to time as to the allowance of alimony as may be proper; that the judgment of a sister state cannot be sued upon in this state unless it is final and conclusive in the state where it was rendered, according to the law of that state. We are now called upon to determine a question arising under the constitution and laws of the United States, and we should look as far as possible to the decisions of the federal courts for guidance. The case of *Barber v. Barber,* 21 How. 582, decided by the supreme court of the United States in 1858, as we view it, is decisive of this case. That was a case arising under a suit in equity in the district court of the United States for the district of Wisconsin, wherein by the decree the wife, by her next friend, the plaintiff in the suit, was awarded a judgment for $5,936.80 on a decree of divorce from bed and board given by the state courts of New York and decreeing alimony to the wife in the annual sum of three hundred and sixty dollars in each and every year. The respondent Spinning insists, however, that under the laws of New York the decree for alimony in that case was final, and that that case must be distinguished from the one at bar. The precise point insisted upon here was undoubtedly before the supreme court of the United States .

and considered in that case. In the dissenting opinion of Justice DANIEL, he says:

"The second error in the position before mentioned is shown by the character and objects of the allowance made as alimony to a wife. This allowance is not in the nature of an absolute debt. It is not unconditional, but always dependent upon the personal merits and conduct of the wife—merits and conduct which must exist and continue, in order to constitute a valid claim to such an allowance. This allowance might unquestionably be forfeited upon proof of criminality or misconduct of the wife, who would not be permitted to enforce the payment of that to which it should be shown she had lost all just claim; and this inhibition, it is presumed, might embrace as well a portion of that allowance at any time in arrears, as its demand in future. The essential character, then, of this allowance, viz.: its being always conditional and dependent, both for its origin and continuation, upon the circumstances which produced or justified it, is demonstrative of the propriety and the necessity of submitting it to the control of that authority whose province it was to judge of those circumstances. That authority can exist nowhere but with the power and the right to control the private and domestic relations of life. The federal government has no such power; it has no commission of *censor morum* over the several states and their people." *Barber v. Barber, supra,* p. 603.

And it is said in the opinion of the majority of the court that "alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, *until the decree has been recalled,* as any other judgment for money is." From this it would seem that the supreme court of the United States understood that under the New York decree the allowance might be forfeited and the decree annulled or recalled for the subsequent immoral conduct of the wife. The case of *Erkenbrach v. Erkenbrach,* 96 N. Y. 456, relied upon by respondent, was decided in 1884, and the point involved was whether

the plaintiff, who had obtained a decree in 1869 which had made no provision for her support, could ten years afterwards, by petition in the same case, be then allowed alimony. The court held that she could not, and in deciding that proposition said:

"The question presented by this appeal is whether a court has power, after the entry of a final decree in an action of limited divorce, establishing a cause of action in favor of the wife, to order an additional allowance for her support. * * * The question comes back to the interpretation of our own statute. No case has been cited in our courts where an application for an allowance for the support of the wife after final decree has been made, except in the case of *Kamp v. Kamp,* 59 N. Y. 219, where the allowance was refused. That was a case of absolute divorce, but no distinction is seen to exist between such a case and one of limited divorce. The statutes authorizing such an allowance in the final decree are similar in both cases, and the power of the court to make such order after final decree is given and prescribed in the same language by the same section.* * *

By expressly authorizing an order to be made after judgment providing only for the 'care, custody and education of the children of the marriage,' it has implicitly prohibited such an order for any other cause."

The allowance to the wife is in the nature of a debt due from one party to the other. The supreme court of Missouri has held that the statutory authority to alter a decree as to alimony or the custody of the children can only be exercised upon *new facts* occurring after the trial. *Deidesheimer v. Deidesheimer,* 74 Mo. App. 236. Unless such facts occur there can be no alteration of the decree. An ordinary judgment or decree in a suit at law or in equity may be discharged by payment, or new facts might arise after judgment warranting its discharge or modification by the court, and proceedings by petition in the same suit might be entertained by the

court for that purpose. That would not affect the finality in the first instance. So, in the case at bar, facts might occur after the decree, such as indicated by Justice DANIEL, which would authorize the court to recall the decree. The proceedings in the action to bring these facts to the attention of the court would be in the nature of a new suit. In this case the husband has removed from the jurisdiction of the Missouri court, probably carrying with him all his property, and, from what the record discloses, has taken no steps to modify the decree; and, if his contention here is correct, he need take no such steps. By pursuing this course he prevents any payment of the judgment of the Missouri court, no matter how able to respond he may be. "Final judgments," says Blackstone, "are such as at once put an end to the action, by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy he sues for." 3 Blackstone, Commentaries, 398. The plaintiff in this action, by her answer in the circuit court of the city of St. Louis in the case of Fred M. Spinning against her, put an end to that action, and recovered the remedy she sued for; and for the purpose of that action, so far as the issues then joined, the judgment was final, within Blackstone's definition. Facts might or might not subsequently arise which would destroy the effects of the judgment or modify it, but these would only furnish grounds for what we have seen would practically be a new suit.

To give effect, as required by § 1, art. 4, of the constitution of the United States and the acts of congress passed in pursuance thereof, to the judgment alleged in the complaint, we hold it to be final, and, in the language of the supreme court of the United States in *Barber v. Barber, supra,* "as much a debt of record, until the decree has been recalled, as any other judgment for money is." Should any modification thereof be hereafter made in the

courts of Missouri, our courts, by proper proceedings instituted therein, will give effect to such modification, thereby carrying out the requirements of the federal constitution. If any modification was made before this action was instituted, it can be pleaded by way of a defense or counter claim in this action. In the case of *Barber v. Barber, supra,* it was also held that under a decree awarding alimony rendered in any state of the United States, the court having jurisdiction, will be carried into judgment in any other state, to have there the same binding force that it has in the state in which it was originally given, and that for such purpose both the equity courts of the United States and the same courts of the state have jurisdiction. In *Kunze v. Kunze, supra,* the supreme court of Wisconsin says:

"If a divorce judgment decree the payment of a specific sum absolutely as alimony, and if (as alleged in this case) such a decree has the effect in that state of a judgment at law for the payment of money, there seems no reason why such a decree may not be enforced by action at law in another state."

The law of Missouri expressly enacts that, when alimony is decreed in gross, such decree shall be a general lien on the realty of the party against whom the decree may be rendered, as in the case of other judgments. For the reasons given herein, we think the lower court erred in sustaining the demurrer to the amended complaint.

The second assignment of error is that the court erred in discharging the garnishee respondent, the National Bank of Commerce, from whom the respondent Spinning had rented a compartment and box in its safety deposit vaults.

Under our laws the writ of garnishment commands the garnishee to answer on oath, not only as to his indebtedness to the defendant, but also as to the personal prop-

erty or effects of the defendant in possession of the garnishee, or *under his control.* Bal. Code, § 5393. From and after the service of the writ, it shall not be lawful for the garnishee to pay to the defendant any debt or to *deliver to him any effects,* and any such payment or delivery shall be void and of no effect as to so much of the debts and effects as may be necessary to satisfy the plaintiff's demand. Bal. Code, § 5398. Should it appear from the garnishee's answer or otherwise that the garnishee had in his possession, *or under his control,* property or effects of the defendant liable to execution, the court shall render a decree requiring the garnishee to deliver up to the sheriff on demand such personal property or effects, or so much of them as may be necessary to satisfy the plaintiff's claim. Bal. Code, § 5404.

The answer of the garnishee may be controverted by the plaintiff or defendant, and issue shall be formed and tried under the direction of the court. Bal. Code, §§ 5409-5411. When the writ is served the garnishee is to retain control of the effects of the debtor until the court shall order that part ' liable to execution turned over to the sheriff. The writ is in aid of the writ of execution. Under § 5404, *supra,* the court is required to ascertain whether the garnishee has under his control, or not, any effects of the defendant liable to execution, and the court shall thereupon render a decree requiring the garnishee to deliver such effects to the sheriff. The language of the statute is:

"Should it appear from the garnishee's answer or otherwise that the garnishee has in his possession or under his control, or had when the writ was served, any personal property or effects of the defendant *liable to execution,* the court shall render a decree requiring the garnishee to deliver up to the sheriff on demand such per-

sonal property or effects or so much of them as may be necessary to satisfy the plaintiff's claim." § 5404, *supra.*

And this answer must be a true answer as to the several matters inquired of in the writ. Bal. Code, § 5399. This means that there shall be a hearing by the court preliminary to such decree, and that the court shall ascertain from the answer or otherwise whether or not the garnishee has under his control effects of the debtor liable to execution. There was a trial in this case to ascertain these facts. The only question, however, inquired into by the court on the answer of the garnishee, was touching the manner in which the box was locked and the control of the garnishee over the box. The answer of the garnishee nowhere alleges that it did not have effects of the defendant under its control. In substance, it says it did not have such effects, unless they were in the box, and the answer then states the facts touching the control of the box. No evidence was introduced as to the contents of the box; it was simply as to the manner of control. From the conclusions of law, the findings of fact, the evidence, and the brief of the garnishee, it is evident that the only question considered by the court below and passed upon, was whether the garnishee had control of the effects in the box. If we are correct in this, we are of the opinion that the court erred in holding that the garnishee did not have control of the contents of the box. At any time on the request of the defendant the garnishee could put it within the power of the defendant to remove the contents of the box, and the defendant could not remove the contents without the consent and active co-operation of the garnishee. As against the defendant, then, the garnishee had control of the contents of the box. It is true that it was impossible for the garnishee to answer specifically as to the contents of the box. The court, however, under § 5404, *supra,*

is authorized to determine from the answer or *otherwise* the effects under the control of the garnishee liable to execution. Under the broad provisions of this section, the court could inquire into the contents of the box by causing the defendant to be examined as a witness, and might even require an inspection of the contents, to the end that the effects liable to execution should be delivered to the sheriff. In the meantime, after the service of the writ, it would be the duty of the garnishee to retain exclusive control of the box until discharged by the court. Should the defendant desire to remove from the box articles not liable to execution, the court, under proper restrictions, could allow the same. From what we have said, it follows that the court erred in discharging the garnishee respondent, the National Bank of Commerce. The court also erred in discharging the other garnishees herein, resulting from its decision that the amended complaint did not state facts sufficient to constitute a cause of action. The court also erred in sustaining the demurrer to said amended complaint, and in dismissing this action, and in awarding costs herein to respondent Spinning and the garnishee respondents.

In all the particulars herein enumerated the court below is reversed. This action is remanded to the court below, with instructions to proceed with the hearing of this case as in this opinion indicated. The appellant is also entitled to her costs on this appeal against the respondent Spinning and the respondent the National Bank of Commerce.

ANDERS, REAVIS and FULLERTON, JJ., concur.

DUNBAR, J., not sitting.