Benjamin B. Morris, Appellant, v. Robert S. Beatty and Myrtle G. Beatty, Defendants. Chicago City Bank and Trust Company, Appellee.

Gen. No. 42,783.

Opinion filed June 16, 1944.

BENJAMIN B. MORRIS, *pro se;* DAVID I. SPARK, of Chicago, of counsel.

RATHJE, HINCKLEY, KULP & SABEL, of Chicago, for appellee; JOSEPH J. SULLIVAN, JR. and WILLIAM E. FISHER, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Benjamin B. Morris secured a judgment against Robert S. Beatty and Myrtle G. Beatty, in the Municipal court of Chicago, for $2,457.93. An execution issued and was returned by the bailiff "no property found and no part satisfied." Morris commenced garnishment proceedings against the Chicago City Bank and Trust Co., as garnishee, and the garnishee filed its answer to the interrogatories filed by Morris. The trial court, without a jury, heard evidence and found the issues against plaintiff, entered judgment on the finding, and discharged the garnishee. Plaintiff appeals.

The answer of the garnishee states that at the time of the service of the garnishment summons upon it, it had and ever since that time has had, and now has in its possession belonging to Robert S. Beatty the sum of $82.35; that it has applied the said sum in part payment of an unpaid note of Beatty in the sum of $3,100 held by the garnishee; that at the time of the service of the summons upon it, it had and ever since that time has had and now has a contract for the rental of a certain safe deposit box to Robert S. Beatty and Myrtle G. Beatty; that it has no control over the contents of said box; that it has no other rights, credits,

choses in action, effects, estate, property or moneys in its possession belonging to Robert S. Beatty and Myrtle G. Beatty. On March 30, 1936, the United States District court, in a bankruptcy proceeding, entered an order enjoining plaintiff from further prosecuting any proceedings in the Municipal court of Chicago to enforce the collection of the judgment in question until the further order of the court, and it was not until March 13, 1942, that an order was entered vacating the injunction order. On May 19, 1942, the garnishee filed a written motion that it be discharged on certain grounds, one of which was that plaintiff had failed to file a traverse to its answer, and at the same time the trial court entered a rule upon the garnishee to file a petition in support of its motion within five days. The garnishee never filed such a petition.

The garnishee contends that because plaintiff failed to file a traverse to its answer, which set up that it had no funds or property of the judgment debtor subject to garnishment, its answer must be taken as true, and therefore the judgment appealed from should be affirmed. It would be a sufficient answer to this contention to say that as the garnishee failed to file a petition in support of its motion for discharge, as required by the aforesaid rule, it thereby abandoned its motion for discharge. Moreover, upon plaintiff's motion the court entered an order setting the garnishment proceedings for hearing and giving plaintiff leave to contest the answer of the garnishee. In that state of the record it was proper to proceed to trial without the formality of further pleading. Sec. 7 of the Garnishment Act (ch. 62, par. 7, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 109.290]), under the heading, "Issue—How made and tried," provides that "the court or justice of the peace shall immediately (unless the case shall for good cause, be continued) proceed to try such cause, as against such garnishee, without

the formality of pleading.'' (*Empire Car-Roofing Co. v. Macey,* 115 Ill. 390, 397; *Finch v. Alexander County Nat. Bank,* 65 Ill. App. 337.) In the instant case, as the garnishee failed to stand on its answer and introduced evidence to sustain its answer, it cannot now contend that its answer should have been taken as true. In *Pink v. Chinskey,* 303 Ill. App. 55 (Abst. Dec.), the plaintiff filed no traverse of the garnishee's answer, but the cause proceeded to trial in the Municipal court without a jury. Mr. Justice FRIEND, speaking for this court, said:

''The garnishee takes the position that its verified answer should be taken as true if not denied or contested; that the burden of proof in a garnishment proceeding is on the plaintiff to establish a garnishable debt; . . . and it is argued that under the provisions of Sec. 7 of the Garnishment Act (Chap. 62, Sec. 7, Smith-Hurd Ill. Rev. Stats. 1937) and Rule 226 of the Revised Civil Practice Rules of the Municipal Court of Chicago, the answer of the garnishee under them should be taken by the court as true where no traverse thereof is made, and that the court was justified in rendering judgment for the garnishee. Under ordinary circumstances these contentions could be justified by the statutory provisions and the decisions cited by garnishee's counsel, but *a careful examination of the abstract of the record clearly discloses that the parties submitted the cause to the court for trial and the question therefore arises whether the judgment was justified by the evidence adduced before the court.* . . .

''The garnishee contends, of course, that since no traverse was made of its answer and of the intervening petitions, all of the facts averred in the answer and petitions were taken as true and that no evidence was necessary. If the garnishee and the petitioners had stood on their answers without a trial there might be some force to this contention, but they pro-

ceeded to introduce evidence, and having done so the real question presented to the court was whether the pleadings of the garnishee and intervening petitioners could be sustained by evidence. Plaintiff did make an oral traverse of all these pleadings and the parties having submitted the cause to the court for hearing plaintiff had a right to insist on a full trial." (Italics ours.)

In *Imperial Fire Ins. Co. v. Shimer, Adm'r,* 96 Ill. 580, the court said (pp. 582, 583):

"Appellant was brought into court by proceedings of garnishment by creditors of Gunning, on the allegation that the company was liable to Gunning upon a policy of insurance. Appellant answered denying the liability. A jury trial was had on the issue thus formed. *It is contended that all these proceedings at the trial should be disregarded and set aside, because no replication to the answer was filed.* Whether such a replication be necessary or not to make a case for a jury, we need not decide. *Both parties treated the issue as properly made, and proceeded with the trial to verdict without objection on this ground.* Appellant after that surely can not be allowed to object on that ground." (Italics ours.)

See, also, *Finch v. Alexander County Nat. Bank, supra,* where the court said (p. 341): "There is nothing in the garnishment act to support the theory that the technicalities of common law pleading can be invoked in garnishment proceedings for the accomplishment of an inequitable end."

The contention of plaintiff that as a result of the service of the garnishment summons upon the garnishee a lien was created in his favor upon the property of defendants in the possession or control of the garnishee, is a meritorious one. (See *Fornoff v. Smith,* 281 Ill. App. 232, 237, 238.)

Plaintiff contends that "the contents of the safe-deposit box rented by the defendants from the gar-

nishee in its vaults constituted effects or estate of the defendants in the possession, custody or charge of the garnishee, and were subject to garnishment.'' This contention is, apparently, not contested by the garnishee. In its brief it states that plaintiff cites numerous cases from other jurisdictions holding that the contents of a safe deposit box are subject to garnishment, but it contends that said rule ''is not directly involved in this case.'' In any event, the contention of plaintiff is sustained by the authorities.

In *Washington Loan & Trust Co. v. Susquehanna Coal Co.*, 26 App. D. C. 149, the Court of Appeals for the District of Columbia discusses the question at considerable length. The court states the contention of the garnishee as follows (pp. 152, 153):

''A safe-deposit box, it is urged, does not fall within the 'goods, chattels, and credits' of the defendant which may be attached. The trust company has no right to open its customer's box, cannot know its contents and does not 'have in possession or under its control' any property of defendant which may be in the box; and these interrogatories, therefore, seek a vain thing, and also seek to violate the private and confidential relations existing between a safe-deposit company and its customers.''

In disposing of the garnishee's contentions the court states (p. 154):

''Property of a defendant in a safe-deposit box of a trust company is either in the possession of the defendant, or in the possession of the trust company. . . . If it is in the possession of the trust company, such company may be garnished therefor, as in possession of personal property of the defendant capable of being seized and sold on execution. *A mere device to guard from intrusion the defendant's property in the vault of the trust company neither devests the defendant of his property, nor releases the company from its charge of defendant's property. There is no*

*magic in two keys, a master key and a customer's key, to put property belonging to a defendant in an attachment beyond the reach of creditors and the process of the courts.*"  (Italics ours.)

To the same effect are *Trowbridge v. Spinning,* 23 Wash. 48, and *Tillinghast v. Johnson,* 34 R. I. 136.

In *National Safe Deposit Co. v. Stead,* 250 Ill. 584, it was held that where a safety deposit company leases a safety deposit box or safe and the lessee takes possession of the box or safe and places therein his securities or other valuables, the relation of bailee and bailor is created between the two parties and the fact that the safety deposit company does not know the character or description of the property that is deposited in the box, does not change that relationship. The court quotes with approval the following from *Lockwood v. Manhattan Storage & Warehouse Co.,* 28 App. Div. 68, 50 N. Y. S. 974 (p. 595) : "It is urged upon the part of the defendant that it was not the bailee because it was not in possession of the plaintiff's property. If it was not, it is difficult to know who was. Certainly the plaintiff was not, because she could not obtain access to the property without the consent and active participation of the defendant. She could not go into her safe unless the defendant used its key first and then allowed her to open the box with her own key, thus absolutely controlling the access of the plaintiff to that which she had deposited within the safe. The vault was the defendant's and was in its custody, and its contents were under the same conditions. As well might it be said that a warehouseman was not in possession of silks in boxes deposited with him as warehouseman because the boxes were nailed up and he had no access to them." The court held that the safety deposit company in that case "is in the legal custody and control of" the property deposited in the box. The court was not called upon to pass upon certain questions now before us.

It appears from undisputed evidence introduced upon the trial that after the garnishee was served in the garnishment proceedings it allowed defendants access to their safe deposit box on at least three occasions, December 11, 1935, November 17, 1936, and December 31, 1936. The first occasion was three and one-half months before the United States District court issued the injunction order. Plaintiff contends, (1) ''The garnishee having answered that it has in its possession a safe-deposit box rented to the defendants, but that the defendants were indebted to it in a large sum of money, and then having allowed the defendants access to such box after answer and before trial, the garnishee must be said to have admitted that the property in its possession was that of the defendants, and there should be a judgment against the garnishee.'' (2) ''The plaintiff having introduced evidence to show that the garnishee allowed the defendants access to the safe-deposit box in its possession after answer and before trial, the burden devolved upon the garnishee to explain the unauthorized entries by the defendants, and, having failed to discharge such burden, there should be a judgment against the garnishee.''

''In *Addyston Pipe Co. v. City of Chicago,* 170 Ill. 580, 584, the court states: 'The process of garnishment and a creditor's bill are, in effect, instituted for the same purpose. They are, as a general rule, instituted to reach money in the hands of a third party due and owing from a judgment debtor to a judgment creditor. A reference to the statute under which the two proceedings are instituted will show their similarity.' The court, after quoting section 1 of the Garnishment Act and section 49 of the Chancery Act, further states (p. 585):

'' 'Under the section of the statute providing for garnishment, where an execution has been issued and returned no property found a summons may be issued against the person supposed to be indebted, command-

ing him to answer as garnishee; under the other statute, where an execution has been issued and returned no property found a creditor's bill may be filed. The object attempted to be reached in each case is practically the same. In one case a judgment may be rendered as in an action at law, while in the other a money decree may be rendered. An execution may issue in either case.'

"In *Goodwine State Bank v. Wise,* 263 Ill. App. 291, the court said (p. 295): ' . . . it is also settled law, that a creditor's bill is considered in the same legal category as a garnishment proceeding when filed to accomplish the same purpose.'

"Sections 24 and 22 of chapter 62 (Garnishment Act) confer equitable powers upon the court in garnishment proceedings.

"In *LaSalle Opera House Co. v. LaSalle Amusement Co.,* 289 Ill. 194, a garnishment proceeding involving a question different from the one in the instant case, the court, after referring to *Adams v. Young,* 200 Mass. 588, states (p. 199): 'That case was a suit in equity while this is a proceeding in garnishment, but under section 24 of the Garnishment Act, which gives the court power to make all orders in regard to property *under the control of the garnishee* which may be necessary or equitable between the parties, the court exercises an equitable jurisdiction.' " (*Fidelity Coal Co. v. Diamond,* 322 Ill. App. 229, 240, 241. Italics ours.)

In *West Cache Sugar Co. v. Hendrickson et al.* (*Zion's Savings Bank & Trust Co., Garnishee*), 56 Utah 327, 190 Pac. 946, it was sought in garnishment proceedings to reach the contents of a safety deposit vault in the garnishee's possession. In its opinion the Supreme court of Utah states (p. 949):

" . . . It is true that in 20 Cyc. 1022, it is said:

" 'According to the weight of authority, property

or funds deposited with a safety deposit company cannot be reached by garnishment proceedings.'

"The text just quoted, however, was written more than 14 years ago, and since then a number of courts of last resort have held the law to be otherwise under statutes the provisions of which are substantially the same as those of this state. If we keep in mind that the relationship existing between the lessor of a safety deposit box and that of his customer is one of bailee and bailor for hire, we should encounter little, if any, difficulty in arriving at the conclusion that the contents of such boxes are subject to the process of garnishment or attachment, and that the boxes themselves may be ordered opened by the court for the purpose of reaching their contents. To that effect are the following well-considered cases: *Tillinghast v. Johnson* (1912), 34 R. I. 136, 82 Atl. 788, 41 L. R. A. (N. S.) 764, Ann. Cas. 1914 A, 960; *Washington Loan, etc., Co. v. Susquehanna Coal Co.*, 26 App. D. C. 149; *Trowbridge v. Spinning*, 23 Wash. 48, 62 Pac. 125, 54 L. R. A. 204, 83 Am. St. Rep. 806; *National Safe Deposit Co. v. Stead*, 250 Ill. 584, 95 N. E. 973, Ann. Cas. 1912 B, 430; *United States v. Graff*, 67 Barb. (N. Y.) 305, affirmed in 4 Hun, 634.

" . . .

"It certainly would be a reproach to our jurisprudence and to the administration of the law if it were held that the law may successfully be defied by human agencies, and that courts cannot make their processes effective merely because valuable property may be locked and concealed in a steel safe or receptacle. The court's orders may not be baffled merely because the lessee or owner of a safety deposit box refuses to surrender the key by which the box, in connection with the master key, is opened. If, therefore, there is any method or device available by means of which such boxes can be opened without destroying them and their

contents, the courts have ample power to direct those who have possession and control of such boxes to open them by any available method, and to deliver the contents thereof into the custody of the law as hereinafter more specifically pointed out.''

In *Trainer v. Saunders,* 270 Pa. 451, it was held that the trial court had the power to compel the trust company to open the safety deposit box. (See, also, *National Safe Deposit Co. v. Stead, supra.*)

Plaintiff contends that had the garnishee complied with the provisions of the Garnishment Act and performed the duties imposed upon it by the Act, it would have refused defendants access to their safety deposit box until the final proceedings, in which event the contents of the box would have remained intact until such hearing; that at the hearing the court would have been authorized to issue an order requiring the garnishee to open such box, inventory its contents, deliver the same to the bailiff and apply the same toward the payment of the judgment of plaintiff against defendants; that the garnishee acted at its peril in permitting the judgment debtors access to the box and the trial court should have entered a judgment against it for the amount of plaintiff's judgment against defendants. The garnishee's answer to this contention is that no proof was offered by the judgment creditor as to the contents of the box between the date of the service of the garnishment writ and the filing of the garnishee's answer and therefore there is no authority or statutory basis for a judgment against the garnishee. In support of its contention the garnishee cites *Framheim v. Miller,* 241 Ill. App. 328, as a case that supports its position. That case, in our opinion, is distinguishable from the instant one. The opinion states, as it well might, that ''the record is somewhat confused.'' It is clear, however, that there was no evidence introduced that the garnishee had permitted the judgment debtor to enter the safe deposit box after

service had been had upon the garnishee. The opinion states that the garnishee had refused and failed to comply with an order to open the safety deposit box and that the trial court entered judgment against the garnishee for its failure in that regard. The judgment creditor apparently justified the entry of the judgment upon section 25 of the Garnishment Act, and the court held that that section did not authorize a punishment of the garnishee for contempt or to enter judgment against the garnishee unless it appeared that the garnishee had property in its possession belonging to the defendant. It would appear that section 24 of the Act was not called to the attention of the court. That section reads as follows (ch. 62, par. 24, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 109.307]):

"24. Equitable powers of court.]    § 24. When it shall appear that any garnishee has in his hands, *or under his control,* any goods, chattels, choses in action or effects, belonging to or which he is bound to deliver to the defendant, with or without condition, the court or justice of the peace may make any and all proper orders in regard to the delivery thereof to the proper officer, and the sale or disposition of the same, and the discharging of any lien thereon, and may authorize the garnishee to sell any such property, or collect any choses in action, and account for the proceeds thereof; or, if the proceeding be in a court of record, the court may appoint a receiver to take possession and sell, collect or otherwise dispose of the same, and make all orders in regard thereto which may be necessary or equitable between the parties."

It will be noted that in the *Framheim* case the court said (p. 332): ". . . it has been held in other jurisdictions, in proceedings somewhat similar to the one at bar, that the garnishee may be compelled, by order of court, to open a safety deposit box. *West Cache Sugar Co. v. Hendrickson,* 56 Utah 327, 190 Pac. 946, 11 A. L. R. 216; *Trainer v. Saunders,* 270 Pa. 451, 19

A. L. R. 861.'' We are satisfied that under section 24 of the Garnishment Act, the trial court, in the instant case, in the exercise of the equitable powers given it by that section, had the power to order the garnishee to open the box in question, but plaintiff did not request such an order because the unauthorized and illegal conduct of the garnishee in allowing defendants access to their safety deposit box after the service of the garnishment summons made it plain that such an order would have been but an idle gesture. The garnishee does not attempt to justify its conduct in allowing defendants access to the box—indeed, it cannot justify it—but it boldly asserts, in effect, that even though it made it impossible for plaintiff to prove the contents of the box, nevertheless, plaintiff, under the law, cannot recover a judgment against it. If such were the law, it would lie in the power of safety deposit companies to defeat garnishment actions against them regardless of the equities of the cases. We take judicial notice of the well known fact that a considerable number of people now place their money, securities, jewelry, etc., in safety deposit boxes, and the law is not so weak that it will permit a safety deposit company, acting in concert with a box holder, to defy and frustrate a garnishment summons by permitting the safety deposit box holder to have access to his box after the service of summons. Under the facts of this case the garnishee acted at its peril when it saw fit to put it out of the power of plaintiff to prove the contents of the box, and equity requires that the garnishee bear the burden of proving the contents of the box. It refused to assume that burden, although it appears that it was on friendly terms with defendants. A safety deposit company that obeys the law will not be called upon to bear such a burden.

It appears that on October 3, 1935, the garnishee bank held a note for $3,100 signed by Robert S. Beatty, defendant, and indorsed by Myrtle G. Beatty, defend-

ant, and it held as collateral security for the note a certain mortgage in the sum of $5,000 on a piece of real estate owned by one Beatty. The garnishee was served with summons on November 9, 1935, but it did not liquidate the collateral in its hands and apply the proceeds on account of the debt due it from defendants. On December 7, 1935, it renewed the obligation. On February 25, 1936, it accepted $50 from defendants and reduced the obligation from $3,100 to $3,050. On April 7, 1936, it renewed the indebtedness for the reduced amount. It subsequently renewed the indebtedness on May 2, 1936, June 10, 1936, July 6, 1936, September 3, 1936, March 17, 1937, May 11, 1937, and August 10, 1937. On May 24, 1938, it sold the collateral for $1,500 and accepted the $1,500 in full satisfaction of the note. It further appears from the records of the garnishee bank that on July 30, 1936, it charged the sum of $3,050 due upon the note to undivided profits as a loss. It decided, apparently, on that day, to consider the amount due on the note an absolute loss although it had in its possession at the time the collateral heretofore mentioned. But for some reason not shown by the record, on September 3, 1936, it renewed the note. Plaintiff contends that "the garnishee having answered that it holds collateral which the defendants have deposited with it as security for the repayment of a debt to it, and then, instead of applying the collateral to the payment of such debt to it, renewed the note for such debt after answer and before trial, the garnishee must be said to have waived its right to such collateral, and there should be a judgment against the garnishee;" that the right the garnishee bank had to apply the collateral toward the payment of the note was lost when it constantly continued to renew the note; that each renewal constituted a new arrangement between the parties. Plaintiff cites in support of this contention *Obergfell v. Booth,* 218 Ill. App. 492, and other cases, and he insists that he

would be entitled, in any event, to a judgment against the garnishee for the amount realized upon the collateral. In our view of this appeal it is not necessary to pass upon this contention although we feel impelled to say that there is force in the argument of plaintiff that the record shows that the garnishee pursued a course wherein it completely disregarded the rights of plaintiff and its duty as garnishee. In further support of this argument, plaintiff cites the fact that after the service of the summons the garnishee honored two checks drawn by Robert S. Beatty, defendant, on his account with the garnishee bank.

The judgment of the Municipal court of Chicago is reversed, and the cause is remanded with directions that a judgment be entered against the garnishee for the amount of the judgment of plaintiff against defendants Robert S. Beatty and Myrtle G. Beatty.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.