S. N. COLE, Respondent, v. THE UTAH SUGAR COM-
PANY, a Corporation, and SIDNEY STEVENS IM-
PLEMENT COMPANY, a Corporation, Appellants.

No. 1955. Decided January 14, 1909 (99 Pac. 681).

1. SALES—ACTION FOR PRICE—EVIDENCE. In an action to recover for
beets sold, evidence at the close of plaintiff's case *held* not to
show that another than plaintiff had any interest in the beets.
(Page 154.)

2. PARTIES—DEFECTS—TIME FOR OBJECTION. The objection that
there is a defect of parties plaintiff can only be taken advan-
tage of by demurrer or answer. (Page 154.)

3. PRINCIPAL AND AGENT—RIGHTS OF UNDISCLOSED PRINCIPAL—REAL PARTY IN INTEREST. That a person making a contract for another makes it in his own name does not preclude the other from suing thereon as the real party in interest. (Page 154.)

4. GARNISHMENT—PROCEEDINGS TO PROCURE—SERVICE OF WRIT. Comp. Laws 1907, section 3092, provides that in garnishment before judgment or in aid of an attachment (the proceedings upon a writ issued after judgment being identical) a writ of garnishment must issue, following a prescribed form, which must be directed to the one intended to be made garnishee. Section 3093, provides that the writ must be served as a summons is required to be served. Section 3094 provides that, upon the return of the officer showing due service, the court has jurisdiction to proceed against the garnishee and the funds in his hands. Section 3112 relates to garnishment after judgment, and provides that, where an execution remains in the hands of the officer for service unsatisfied, a writ of garnishment may issue and the property of the judgment debtor may be reached by serving the writ on the person having it in his possession. *Held,* that to confer jurisdiction upon the court service of a writ of garnishment as required by statute is necessary, and, where only a copy of an execution was served on a person with a notice that property in his hands belonging to the execution debtor had been attached and that it should not be transferred to anybody except the serving officer with a request to furnish a statement, the court did not obtain jurisdiction; no writ of garnishment having been issued or served. (Page 157.)

5. GARNISHMENT—PROCEEDINGS TO PROCURE—JURISDICTION—EFFECT OF APPEARANCE OF GARNISHEE—WAIVER OF DEFECTS. While mere defects in service or in the writ of garnishment which are not jurisdictional are waived by the voluntary appearance of the garnishee, where the court obtains no jurisdiction because of failure to comply with the statute requiring service of a writ of garnishment, the garnishee by appearing cannot waive the jurisdictional defect. (Page 158.)

6. CORPORATIONS—GARNISHMENT—NOTICE—SUFFICIENCY. A notice in garnishment proceedings to a person as "manager" without specifying of what he was manager and served on that person individually as shown by the officer's return, stating that property in his hands belonging to a debtor had been attached, etc., was not notice to a company of which the person was manager. (Page 159.)

7. GARNISHMENT—VOLUNTARY PAYMENT BY GARNISHEE—EFFECT. Where a garnishee, not obliged to pay garnished funds in his hands because no writ of garnishment was issued or served, nevertheless paid the amount into court, the payment was a vol-

untary one, and afforded the garnishee no protection as against
the real owner, who was not the judgment debtor.   (Page 159.)

8.  GARNISHMENT—RECEIPT BY CREDITOR OF FUND WITHOUT LEGAL
RIGHT.   Where a garnishee, not obliged to pay over garnished
funds in his hands because of jurisdictional defects in the pro-
ceedings, nevertheless did so, and the amount was used to sat-
isfy the creditor's judgment, the creditor acquired no legal right
to the money as against the true owner, who was not the judg-
ment debtor.   (Page 159.)

9.  GARNISHMENT—CONSTRUCTION OF STATUTES.   Garnishment stat-
utes are to be liberally construed to effect their purpose; but,
where a failure to observe a statutory requirement constitutes a
jurisdictional defect, the courts cannot disregard it.   (Page
160.)

10.  ATTACHMENT—CONSTRUCTION OF STATUTE.   The same rule applies
to attachment statutes.   (Page 160.)

11.  ESTOPPEL—ACCEPTING A PORTION OF CLAIM.   While, under some
circumstances, a creditor may estop himself from preferring a
further claim after receiving a portion of property all of which
belongs to him, yet, where there is no accord and satisfaction in-
volved, he can receive any portion less than the whole at any
time and still demand the remainder, and hence the mere fact
that the owner of funds received what remained from another
who had paid the balance to third persons under a mistake as
to ownership would not preclude his recovery from the other of
the balance.   (Page 160.)

APPEAL from District Court, First Division.   *Hon. W. W. Maughan,* Judge.

Action by S. N. Cole against the Utah Sugar Company
and another.   Judgment for plaintiff, and defendants ap-
peal.

AFFIRMED.

*Joseph Chez* for appellants.

*T. D. Johnson* for respondent.

FRICK, J.

Respondent commenced this action to recover the sum of
$385.74 with accrued interest, as a balance alleged to be due

him for sugar beets sold and delivered to the appellant the
Utah Sugar Company, and which money, it is alleged, said
company had wrongfully transferred to the appellant Sid-
ney Stevens Implement Company. It is further alleged
that said money is held by said appellant for the use and
benefit of respondent. Both appellants are alleged to be Utah
corporations. The appellants answered jointly. After admit-
ting their corporate capacity and denying the other allega-
tions of the complaint generally, they set up an affirmative
defense, in which the appellant the Utah Sugar Company,
hereinafter designated "sugar company," justified the pay-
ment of said money to the other appellant upon the ground
that the sugar company paid the money into the municipal
court of Odgen City pursuant to an execution issued upon
a judgment in favor of the appellant Sidney Stevens Imple-
ment Company, which judgment was against one Erastus
Hansen, who was the person who contracted to sell, and
did sell and deliver, the sugar beets to the appellant sugar
company; that said judgment remained wholly unpaid and
in full force and effect when said money was paid into said
court by the sugar company; that said Sidney Stevens Imple-
ment Company received said money from said court in pay-
ment of the judgment aforesaid. The transaction will be
more fully explained hereafter. The respondent recovered
judgment in the trial court, from which both appellants prose-
cute this appeal.

At the trial the evidence tended to show the following facts:
That the respondent owned some beet lands about five miles
south of the village of Garland, at which place the sugar fac-
tory of the appellant sugar company is located, in Box Elder
county. That respondent in the year 1905 desired to raise
some beets upon his land, and, with that end in view, em-
ployed the Erastus Hansen aforesaid, also known as Rast.
Hansen, at $60 per month to superintend or oversee the culti-
vation and harvesting of the beets. That said Hansen, at
the request of respondent, entered into a written contract
with the sugar company, whereby it was agreed that said

sugar company would furnish the seed and plant twenty-five acres of sugar beets for said Hansen, and that he would cultivate and harvest said beets and deliver them to the sugar company at an agreed price, ranging from $4 to $4.50 per ton. That Hansen would pay the sugar company at the rate of $2.75 per acre for the seed and planting. The contract also provided that it was subject to any interest certain Japanese laborers might have in the beets for their labor in cultivating them. Respondent also testified that, when he and Hansen started out in the spring, they talked of allowing Hansen one-half of the proceeds of the beets in excess of ten tons per acre in addition to the $60 per month. Hansen arranged with some Japanese laborers for the cultivation and harvesting of the beets, and agreed to pay them one-half of the proceeds of the crop as compensation. When Mr. Hansen was about to enter into the contract with the sugar company, he informed respondent and asked him about signing the contract and respondent told Hansen to sign it, which Hansen did. The sugar company did not know of the arrangement existing between Hansen and respondent, but assumed that the beets belonged to Hansen. Hansen testified that, in addition to the amount mentioned in the contract, consisting of about 24 1-2 acres of beets, he also planted 7 or 7 1-2 acres of beets in the orchard owned by respondent, so that the acreage amounted to more than was specified in the contract. After the beets had all been delivered to the sugar company under the Hansen contract, the sugar company deducted from the amount due for beets the sum of $89.40 for seed and planting 32 1-2 acres, as appears from Exhibit 2, admitted in evidence as part of the cross-examination of respondent by appellants' counsel. The respondent, however, testified that about thirty acres of beets were planted, and that, while he did not know the exact number of tons raised and delivered, the beets averaged a little less than ten tons per acre; that the beets sold and delivered to the sugar company amounted to between $1,200 and $1,300, of which the Japanese laborers received one-half as their

share; that he had received in the neighborhood of $200 upon the contract, and that the sugar company had retained the sum of $385.74 out of the amount coming to him, and had refused to pay it. Mr. Hansen further testified that at the time of settlement for the beets in the fall of 1905, and when the Japanese laborers were paid, the sugar company offered to pay him for his share the sum of $172.23 as the balance due on the contract; that the manager of the sugar company said that he had paid the $385.74 into court upon a judgment against Hansen; that Hansen then told the manager that the money for the beets did not belong to Hansen, but that it belonged to respondent, and Hansen refused to receive the money and left it with the sugar company. The respondent testified that he afterwards, in May, 1906, did receive the check offered to Hansen for $172.23 as aforesaid, and obtained payment thereof by indorsing on the back thereof both his own name and that of Hansen.

This substantially was the state of the proof when respondent rested. The appellants interposed a motion for nonsuit upon various grounds, but the ones now insisted upon are as follows: (1) That the respondent was not the sole owner of the beets; and (2) that the controversy arises by virtue of a written contract entered into between Hansen and the sugar company which was a personal and nontransferable contract to which respondent was not a party, and hence was not the real party in interest, and cannot maintain the action.

As to the first ground, as the evidence stood when respondent rested, there certainly was nothing before the court which tended to show that any one else claimed any interest in the beets or the proceeds thereof except respondent. Mr. Hansen, in whose name the contract was made, was a witness in the case, and he disclaimed all interest in the beets or the proceeds thereof. The fact that there had been some talk between Hansen and respondent that respondent was to receive all the proceeds in case the beets did not exceed ten tons per acre, and that Hansen should have half in

excess of ten tons as additional compensation, did not necessarily give Mr. Hansen an interest in the beets themselves. But, apart from this, there was no evidence at this stage of the proceedings which tended to show that the beets yielded more than ten tons to the acre. Indeed, all the evidence was to the effect that the yield was a little below that amount. If in connection with this we consider Hansen's disclaimer while on the witness stand of any interest in the beets, the court was not authorized to find from the evidence as it then stood that Hansen had any interest in the beets. But, if the appellants desired to interpose a plea of a defect of parties, they should have set it up in their answer. Nor did the fact that Hansen made the contract in his own name prevent respondent from bringing the action as the real party in interest. The rule is stated in 1 Bates on Pleading, Practice, Parties, and Forms, p. 28, as follows: "It makes no difference that the instrument or promise to one who is acting for another is under seal, the real owner can sue upon it though his name does not appear therein." The evidence certainly was to the effect that Hansen entered into the contract for respondent. The authorities cited by Mr. Bates are very numerous, and need not be specially referred to here. These authorities cover cases of agents, undisclosed principals, and representatives of all kinds. See volume aforesaid, pages 27 and 28.

The objection that the party suing is not the real party in interest can only be taken advantage of by demurrer or answer; and, if not so taken, is waived. This doctrine is sustained by abundant authority. See 15 Ency. Pl. & Pr., pp. 713, 714. The court therefore committed no error in overruling the motion for a nonsuit.

Proceeding now to the consideration of the defense to this action, the evidence tended to establish the following facts: In October, 1902, the appellant Sidney Stevens Implement Company obtained a judgment against Erastus and Jacob Hansen in the justice's court of Ogden City for the sum of $292.18 and for $10 costs, which judgment remained un-

paid and in full force. On the 4th day of November, 1905, an execution was duly issued upon said judgment out of the municipal court of Ogden City as the successor of said justice's court against said Hansen and delivered to the constable of Box Elder county for service and return. On the 7th day of November the said constable pretended to serve said execution by delivering a copy thereof to Mosiah Evans. In addition to the copy of said execution, the constable delivered to said Evans a paper, which in words and figures is as follows:

"State of Utah, County of Weber, ss.:
To Mosiah Evans, Manager:
Please take notice that all moneys, goods, credits, effects, debts due or owing, or any personal property, or all stocks or shares, or interest in stocks or shares of the —————— company, in your possession or under your control, belonging to the within named defendant or either of them, are attached in pursuance of a writ of which the within is a copy, and you are notified not to pay over or transfer the same to any one but myself.
Please furnish statement.
Dated this 4th day of November, A. D. 1905.
Fees: $————. ————————,
Paid, $————. ————————.
Due, $————."
I hereby certify that I have served the within writ by delivering a copy of same to Mosiah Evans this 7th day of November, 1905.
Fees, $1, Pd.  T. E. Secrist, Constable."

No other writs, notices, or papers of any kind were served either upon said Evans or upon the sugar company. Upon the service of a copy of said execution and the aforesaid paper upon Mr. Evans, he, acting for the sugar company, deducted the amount called for by said execution, namely, the sum of $385.74, from the amount due upon the Hansen contract, and forwarded said amount to one Jensen as the clerk of the municipal court of Ogden City. Said clerk applied said amount in payment of the judgment upon which the execution was issued, and after the Sidney Stevens Implement Company, the judgment creditor of Hansen, had indorsed satisfaction upon said judgment, de-

livered said $385.74 to said company as and for full payment of said judgment. Mosiah Evans, the manager, further testified that, when he forwarded the check to the clerk of said court, neither he nor the sugar company had any knowledge of the respondent's claim to or right in the money under the Hansen contract but believed that it belonged to Hansen, and that Evans, as manager of the sugar company, was legally required to pay said money for the purpose of applying it upon the judgment against Hansen. It is claimed by appellant sugar company that, inasmuch as the contract was a personal one with Mr. Hansen, the sugar company had a perfect legal right to pay the money due upon it to him; that, if it had a right to pay it to him, it also had a legal right to pay it in pursuance of law into court for the benefit of Mr. Hansen's judgment creditor; and that it did just this, and therefore the judgment against it is erroneous. The appellant Sidney Stevens Implement Company contends that it obtained the money under due process of law, and applied it in payment of a judgment against Hansen, the judgment debtor, and hence the judgment is erroneous as against it. No doubt, under the facts in this case, the sugar company was authorized to pay Mr. Hansen the amount due upon the contract, and payment to him would have been binding upon the respondent. As to whether the sugar company could also have paid the money due upon the contract for the benefit of Mr. Hansen's creditors under legal process is a question not involved, and we therefore express no opinion upon it. The claim that the sugar company paid in pursuance of legal process cannot be sustained. In case of garnishment before judgment, or in aid of an attachment, section 3092, Comp. Laws 1907, provides that writ of garnishment must issue, the form of which is prescribed by said section, which must be directed to the person or corporation who is intended to be made garnishee. By section 3093 it is provided that this writ must be served upon the garnishee in the same manner as a summons in an action is required to be served. Section 3094 provides

that, when the return of the officer shows due service upon the person named in the writ of garnishment, this confers jurisdiction upon the court to proceed against the garnishee and the funds in his hands. Section 3095 provides that the garnishee must answer in writing and under oath certain questions which are set forth in the section. And it is further provided in said section that, unless the fee is paid or tendered to the garnishee, no answer can be required from him. By section 3098 it is provided that when it shall be made to appear that the garnishee has been duly served with a writ of garnishment, and it shall further be made to appear by the oath of the person serving said writ that the fee of $2 has been tendered or paid to the garnishee, then the garnishee may be proceeded against by the court, whether he answer or not. Section 3112 provides for garnishment after judgment in aid of execution, and it is there provided that in case an execution is issued upon a judgment, and remains in the hands of the officer for service unsatisfied, a writ of garnishment may issue, and the moneys, credits, and effects of the judgment debtor may be reached by serving the writ upon the person who has any such in his possession belonging to the judgment debtor. The proceedings upon a writ issued after judgment are precisely the same as upon a writ issued before judgment. In the case at bar, an execution against Erastus Hansen was issued and delivered to an officer in whose hands it remained until the 7th day of November, 1905, when the alleged service thereof was made upon Mosiah Evans, but the service as made was a mere nullity. Under our statute merely serving Mr. Evans with a copy of the execution and requesting him to make the statement set forth above amounted to nothing. No writ of garnishment was ever issued or served. Without due service of the writ upon the garnishee the court could acquire no jurisdiction.

Referring to this point, in 20 Cyc. 1047, it is said:

"The service of a writ of summons in garnishment is regulated by statute, which must be strictly followed in order to confer jurisdiction upon the court, and in the majority of jurisdictions actual service upon the garnishee is required, and a failure to comply with the statute in respect to service is not waived by the voluntary appearance of the garnishee so as to confer jurisdiction upon the court."

Mere defects in service or in the writ, which are not jurisdictional, are waived by the voluntary appearance of the garnishee. In 2 Shinn on Attachment and Garnishment, section 610, the law upon this question is stated to be to the effect that the garnishee cannot waive due and legal service of the writ of garnishment.

"And, if the garnishee is not legally served, nothing has been attached by the process of garnishment. . . . It is essential in order to bind the creditor (the principal defendant) whose claim is sought to be appropriated by process of garnishment that there should be service thereof, and such principal defendant will not be bound by an independent and spontaneous admission of his rights by his debtor—the garnishee. . . . The court does not obtain jurisdiction over the debt sought to be seized without sufficient service upon the garnishee. . . . The garnishee by appearing and answering cannot waive objection to the jurisdiction. Jurisdictional defects can be taken advantage of even in a collateral proceeding."

In Rood on Garnishment, section 213, it is said:

"The garnishment judgment, in order to be a protection to the garnishee against subsequent liability, must have been rendered by a court having jurisdiction of the subject-matter and of the parties; and this can be acquired only upon performance of all the statutory prerequisites, and compliance with all the preliminaries which the statute makes conditions of jurisdiction. All of this must appear of record in the garnishment proceedings which are set up as a defense in the subsequent suit."

There is neither order or judgment of any character upon which the sugar company relies to justify the payment of the money in this case. There is not even a semblance of jurisdiction shown for any court to make any order with regard to the pretended garnishment. There is no pretense that a writ of garnishment was ever issued. But beyond

this there is no service upon the garnishee of anything. The notice addressed to "Mosiah Evans, Manager," can amount to nothing. Manager of whom or what? If it had been made to appear from the return of the officer that he had served a writ of garnishment upon the sugar company by leaving it with Mosiah Evans, its manager, the fact that it was directed merely to Mosiah Evans might be overlooked. But the officer served no writ of garnishment on any one. The notice he did serve was not served upon the sugar company, but upon Mosiah Evans only, as the return of the officer clearly shows. The sugar company, therefore, had no right whatever to pay the money into any court whether the money belonged to Hansen or not. The payment was a mere voluntary payment. In Waples on Attachment and Garnishment, section 959 (2d Ed.), the author says:

"Voluntary payment to the attaching creditor will not screen the garnishee from his debt to his own creditor. And it may be deemed voluntary should he have legal ground for resisting the execution, yet failed to use it—especially if the principal debtor is absent. . . . So, too, when he surrenders property to the court without order, when not served till after the return day. Paying when not obliged to pay is voluntary, and therefore not protection."

When Mr. Evans, as the manager of the sugar company, paid the $385.74 to the clerk of the municipal court, it was precisely the same as though Evans had paid it upon the mere request of either the Sidney Stevens Implement Company or the clerk. It was merely a voluntary payment of money belonging to another, and hence affords no protection as against the real owner thereof. Nor did the Sidney Stevens Implement Company acquire any legal right to the money as against respondent. It applied money to its use without legal right or authority, and therefore held it subject to the real owner's rights. In this connection we desire to state that what we have said with regard to the rights and liabilities of garnishees and

creditors is limited to the facts in this case. We do not
intend to establish a rule which requires an exact and literal
compliance with our statute relating to attachment and gar-
nishment. Those statutes all require a liberal con-
struction with the view of effecting their purpose;    **9, 10**
but, when the defect is jurisdictional as in this case,
the courts have no right nor authority to disregard such
defect. Where jurisdiction fails, usurpation and confisca-
tion usually begin. The mere fact that A. is indebted to
B. gives B. no better right to deal with A.'s money or
credits than B. would have otherwise. Nor does it give C.
the right to aid B. in securing his debt, except by the methods
provided by law.

The contention that respondent ratified the act of the
sugar company in paying the money into court by receiving
the remainder of the money due upon the contract after
$385.74 had been deducted cannot prevail. There was noth-
ing to ratify so far as respondent was concerned.
It is true that, under some circumstances, a creditor    **11**
may estop himself from preferring a further claim
after receiving a portion of the funds or property, all of
which belonged to him. But such is not the case here. There
is no accord and satisfaction involved, and none was pleaded
nor proved. Respondent could receive any portion less than
the whole at any time, and still demand the remainder. The
most that can be said under the facts in this case is that a
party received less than the whole amount due him without
releasing his debtor for a valuable consideration. If the
sugar company owed any balance for beets which belonged
to respondent, he was entitled to it. If the appellants be-
lieved that the money, or any part of it, belonged to Hansen,
or that he had some interest in the beets, they ought to have
set it up in their answer, and should have asked the court
to make Hansen a party to the action. No such objection
or defense was made. Both appellants relied solely upon
the defense of justification. True, they denied respondent's
right to the money, but offered no proof upon that point ex-

cept the contract entered into between Hansen and the sugar company. The *prima facie* legal effect of this contract was overcome when respondent proved that he was the real party in interest, and that the beets belonged to him, and not to Hansen. Hansen himself testified to .this effect, and thus the court could not properly find otherwise than it did, namely, that the money constituting the proceeds for the beets belonged to respondent, and, as the justification failed, the money, whichever of the appellants had it, was held for the use and benefit of respondent.

Taking another view, the sugar company is liable because it paid neither the ostensible creditor nor respondent, the real creditor; and the Sidney Stevens Implement Company is liable because it holds respondent's money without legal right or authority, and hence ought to pay it to him.

From what has been said, the question raised by respondent, that the execution issued against Hansen was of no effect, is immaterial. Nor is the question urged by appellants, that the yield of the beets exceeded ten tons per acre, material. But, if it were, the court's finding that Hansen had no interest in the beets is sustained by sufficient evidence. The entire tonnage, as appears from the records of the sugar company, amounted to three hundred tons and nine hundred pounds. If there were 32½ acres of beets planted under the contract, as appellant's Exhibit 2 showed there were, then the yield was less than ten tons per acre planted. Hansen says there were 24½ acres in one parcel and 7 or 7½ in another, and the sugar company charged and collected pay for seed and planting 32½ acres under the Hansen contract. This clearly justified the court's finding that Hansen had no interest in the beets by virtue of the arrangement existing between him and the respondent.

The judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.