WEST CACHE SUGAR CO. v. HENDRICKSON et al. (ZION'S SAVINGS BANK & TRUST CO., Garnishee).

No. 3444.   Decided June 14, 1920.   (190 Pac. 946.)

1. GARNISHMENT—COURT MAY REQUIRE GARNISHEE BANK TO OPEN SAFETY DEPOSIT BOX TO REACH CONTENTS. In garnishment proceedings, where it is sought to reach the contents of a safety deposit vault in garnishee's possession, the district court has power to require garnishee to open the box for the purpose of reaching its contents by the process of garnishment, in view of the broad provisions of the garnishment statute and of Comp. Laws 1917, section 1813, conferring power to carry jurisdiction into effect.[1]

2. ATTACHMENT—GARNISHMENT—CONTENTS OF SAFETY DEPOSIT BOX ARE SUBJECT TO WRIT. The contents of safety deposit boxes are subject to garnishment or attachment.

3. GARNISHMENT—THAT OPENING OF SAFETY DEPOSIT BOX BY GARNISHEE INCURS EXPENSE NO EXCUSE FOR DISOBEDIENCE. In garnishment proceedings, wherein it is sought to reach the contents of a safety deposit box leased by garnishee bank, that the garnishee is required to call in an expert to open the box at an expense of two dollars and fifty cents constitutes no excuse for failing to open the box when ordered to do so by the court.

4. GARNISHMENT—NEITHER GARNISHEE NOR DEBTOR ENTITLED TO NOTICE BEFORE ORDER TO OPEN SAFETY DEPOSIT BOX. Where it is sought by garnishment to reach the contents of a safety de-

posit box leased by garnishee to the judgment debtor, neither the garnishee nor the judgment debtor is entitled to notice before making and serving an order requiring the box to be opened.

5.  GARNISHMENT—RESPONSIBILITY OF GARNISHEE BANK UPON OPEN-ING SAFETY DEPOSIT BOX UNDER COURT ORDER STATED. Where it is sought in garnishment to reach the contents of a safety deposit box leased by the garnishee to the judgment debtor, the garnishee owning the box and having the physical possession and control thereof is responsible for the contents to the same effect as any bailee of property would be under the circumstances.

6.  EVIDENCE—COURTS WILL TAKE JUDICIAL NOTICE AS TO THE USE OF SAFETY DEPOSIT BOXES. It is a matter of common knowledge that safety deposit boxes are generally used for safely keeping valuable articles and securities of all kinds, and that the head of a family who rents the box may permit the different members thereof, or a friend, to deposit their valuables in the box with his.

.  GARNISHMENT—ORDER REQUIRING GARNISHEE TO OPEN SAFETY DE-POSIT BOX SHOULD ALLOW GARNISHEE TO MAKE INVENTORY. An order in garnishment proceedings, requiring a garnishee bank to open a safety deposit box for the purpose of reaching its contents, should be so framed as to permit the garnishee to be present by its agents or attorneys, and to make a complete and accurate inventory of the articles that are found in the box when it is opened.

\.  GARNISHMENT—NOTICE NECESSARY UPON OPENING SAFETY DE-POSIT BOX FOR INSPECTION STATED. In garnishment proceedings, where it is sought to reach the contents of a safety deposit box, it is not necessary that notice be given to judgment debtor, or any person other than the garnishee, that the box be opened for inspection, and such an order may be made upon ex parte application.

9.  GARNISHMENT—ORDER REQUIRING GARNISHEE BANK TO OPEN SAFETY DEPOSIT BOX HELD TOO BROAD. In garnishment proceedings, where it was sought to reach the contents of a safety deposit box in possession of garnishee bank, an order, requiring the bank to open the box and deliver the contents to the sheriff, who shall keep such property as is liable to garnishment and attachment, *held* not sufficiently to guard and protect the rights of the garnishee or persons other than the judgment debtor who has access thereto.

10. GARNISHMENT—GARNISHEE BANK'S LIABILITY UPON OPENING
SAFETY DEPOSIT BOX IN ITS POSSESSION STATED. In garnishment
proceedings, where it is sought to reach contents of a safety
deposit box in garnishee bank's possession, the garnishee under
no circumstances would be chargeable with any property except
such as is owned by the judgment debtor, or in which he has
a beneficial interest which may be reached by the process of
garnishment.

Appeal from District Court, Third District, Salt Lake
County; *H. M. Stephens,* Judge.

Action by West Cache Sugar Company against John A.
Hendrickson and another and the Zion's Savings Bank &
Trust Company, garnishee. Plaintiff recovered judgment
against the principal defendants, and the court directed gar-
nishment to be issued, under which an order was entered,
requiring the garnishee to deliver the contents of a safety de-
posit box to the sheriff.

From a denial of a motion to quash such order, the gar-
nishee appeals.

REMANDED, with directions to modify.

See, also, 56 Utah 315, 190 Pac. 952.

*D. H. Thomas,* of Salt Lake City, for appellant.

*Cheney, Jensen, & Holman,* of Salt Lake City, for re-
spondent.

---

[1] *Cole* v. *Sugar Co.,* 35 Utah, 148, 99 Pac. 681.

FRICK, J.

The plaintiff, West Cache Sugar Company, a corporation,
obtained judgment in the district court of Salt Lake county
against the defendants, John A. Hendrickson and Lorenzo
N. Stohl. The judgment not being satisfied, the plaintiff,

pursuant to our statute (Comp. Laws Utah 1917, sections 6730, 6752) caused a writ of garnishment to be issued in said action, which on the 7th day of June, 1919, was served on the Zion's Savings Bank & Trust Company, hereinafter called garnishee.

In addition to the usual statutory interrogatories that are propounded to garnishees, there was also appended the following interrogatory: "Have defendants, or either of them, a safety deposit box in your bank?" The garnishee, after answering in writing and under oath all the statutory interrogatories in the negative, that is, that it was not indebted to the defendants, or either of them, that it had no property or effects of theirs in its possession or under its control, and that it knew of no debts owing to them, or either of them, also under oath answered the interrogatory relating to the safety deposit box as follows: "Yes; Mr. Lorenzo N. Stohl has."

The answers of the garnishee were duly filed in said district court, and the plaintiff did not deny or controvert them in any way as, under the statute, it might have done within ten days after they were filed. On the 27th day of June, 1909, however, and after more than ten days had elapsed from the time of filing the answers, and after the garnishee's answer, under the statute, had become conclusive, the plaintiff, by its counsel, appeared in said court and made an ex parte application for an order requiring the garnishee to open the safety deposit box referred to in its answer and to deliver the contents thereof to the sheriff of Salt Lake county. Pursuant to said application the district court issued the order hereinafter set forth. The order, after referring to the garnishee's answer respecting the safety deposit box, and that the plaintiff claimed that said Stohl "has property and securities on deposit" in said box, reads as follows:

"Now therefore, it is hereby ordered and adjudged, that the said garnishee defendant cause said box to be opened, and deliver the property therein to the sheriff of Salt Lake county, who shall take and keep such of said property and securities as are liable to garnishment and attachment herein."

The sheriff made return to the effect that he had duly served said order upon the garnishee; that he had made demand upon O. C. Beebe, cashier'' of said garnishee, to comply with said order and to cause said safety deposit box to be opened ''and the contents of the box delivered to me as sheriff,'' and that said ''O. C. Beebe refused to comply with the order.'' Thereafter, on the 1st day of July, 1919, counsel for the garnishee served a notice upon plaintiff's counsel to the effect that on the fifth day of said month he would move the court to quash the order upon various grounds, among others, that the district court had exceeded its authority in making the same. The motion was supported by the affidavit of the cashier of the garnishee, in which, among other things, it was stated that the garnishee could not open said box without the key, which was in the possession of said Stohl, unless great force were used to open the same, and such force, if used, would ''greatly damage, mutilate, and destroy garnishee's vaults'' in which said box was placed.

Thereafter, on the twelfth day of July, the garnishee by leave of court filed amendments to the motion to quash, and also amended its original answer filed in the garnishment proceeding. In the amended answer the garnishee averred that said Stohl was not the only person who had access by means of his key to the said deposit box, but that there were two other persons who had access thereto by means of his key. In the amended motion to quash the writ, the garnishee set forth, among other grounds, that the order to open the safety deposit box was ''improvidently issued, in that it was issued without notice,'' etc., and also set forth the fact that the other persons referred to in its answer had equal right to, and did have access to, said safety deposit box, and that the garnishee had no knowledge respecting the contents of said box, nor whether it contained anything.

At the hearing of said motion to quash the garnishee produced evidence to the effect that in addition to said Stohl two other persons had access to the box, and that the only means by which said box could be opened, according to the knowledge and belief of the cashier and the attorneys of the

garnishee, was to force said box open by breaking the hinges or the lock, etc. Upon the other hand, the plaintiff produced evidence that there was a comparatively easy and inexpensive method of opening safety deposit boxes like the one in question by means of drilling a small hole into the lock, through which the tumblers in the lock could be turned, so that by means of the master key alone, which was in the possession of the garnishee, the box could be opened without any substantial injury; that said hole could be plugged and the combination of the lock changed and other keys obtained, which, if done, left the box in substantially the same condition for use as it was before it was opened by said method; that said method had been in use for some time in Salt Lake City; that at least several hundred safety deposit boxes had been opened in that way in the different vaults in Salt Lake City, and that there were several experts in said city who opened safety deposit boxes, and that a certain expert had in fact opened some of the garnishee's safety deposit boxes by that method during the past year. The custodian in charge of the garnishee's safety deposit vaults and boxes conceded that the expert had opened a considerable number of the garnishee's safety deposit boxes, by the method aforesaid. He testified, however, that the cashier was not present when the boxes, or any of them, were opened, and he did not know whether the cashier was aware of the method or not.

The district court denied the garnishee's motion to quash the order to open the safety deposit box, and confirmed the same, to which ruling the garnishee excepted. In due time, and pursuant to the provisions of Comp. Laws Utah 1917, section 6753, the garnishee has appealed to this court, and assigns the ruling of the district court, in the particulars stated, as error, giving numerous reasons which it is not necessary to set forth here.

In his brief, counsel for the garnishee, among other things, insists: (1) That the district court had no power or jurisdiction to make the order requiring the garnishee to open the box, and in that connection counsel expresses serious doubt

whether the contents of a safety deposit box are the subject
of garnishment process; (2) assuming such power, however,
that the garnishee cannot be required to expend its money
to open the box nor to damage its property in doing so with-
out being indemnified; (3) that the order to open the safety
deposit box merely required the garnishee to open the same
in the usual manner, namely, by means of the customer's key
when used in connection with the master key in its posses-
sion, which in this case could not be done, for the reason that
the customer was not within this jurisdiction and his key
could not be obtained, although the garnishee had made all
reasonable efforts to do so; and (4) that the order was "im-
providently issued."

The contention that the district court did not have the
power or jurisdiction to issue the order requiring the gar-
nishee to open the safety deposit box for the purpose of
reaching its contents by the process of garnishment is not
tenable. The provisions of our statute relating to garnish-
ments are very broad and comprehensive. This court has
held (*Cole* v. *Sugar Co.*, 35 Utah, 148, 99 Pac. 681) that the
statute should be liberally construed, and so as to fully ef-
fectuate the purpose sought to be attained thereby. More-
over, Comp. Laws Utah 1917, section 1813, provides:

"When jurisdiction is, by statute, conferred on a court or judi-
cial officer, all the means necessary to carry it into effect are also
given; and in the exercise of the jurisdiction, if the course of pro-
ceeding be not specifically pointed out by statute, any suitable
process or mode of proceeding may be adopted which may appear
most comfortable to the spirit of the statute or of the Codes of
Procedure."

The district court certainly had jurisdiction of the action,
and by the service of the writ of garnishment on the gar-
nishee and the filing of its answers in response to the writ,
wherein it stated that the defendant Stohl had rented a safe-
ty deposit box in its bank vaults, the court also had juris-
diction of the garnishee, and, in view of the provisions
of section 1813, supra, had full power and authority
to direct what should be done in the premises in order
to effectuate the object or purpose of the writ of garnish-

ment. Nor can the contention prevail that the contents of a safety deposit box which is rented by a judgment debtor cannot be reached by the process of garnishment or attachment. It is true that in 20 Cyc. 1022, it is said:

"According to the weight of authority, property or funds deposited with a safety deposit company cannot be reached by garnishment proceedings."

The text just quoted, however, was written more than fourteen years ago, and since then a number of courts of last resort have held the law to be otherwise under statutes the provisions of which are substantially the same as those of this state. If we keep in mind that the relationship existing between the lessor of a safety deposit box and that of his customer is one of bailee and bailor for hire, we **2** should encounter little, if any, difficulty in arriving at the conclusion that the contents of such boxes are subject to the process of garnishment or attachment, and that the boxes themselves may be ordered opened by the court for the purpose of reaching their contents. To that effect are the following well-considered cases: *Tillinghast* v. *Johnson* (1912) 34 R. I. 136, 82 Atl. 788, 41 L. R. A. (N. S.) 764, Ann. Cas. 1914A, 960; *Washington Loan, etc., Co.* v. *Susquehanna Coal Co.,* 26 App. D. C. 149; *Trowbridge* v. *Spinning,* 23 Wash. 48, 62 Pac. 125, 54 L. R. A. 204, 83 Am. St. Rep. 806; *National Safe Deposit Co.* v. *Stead,* 250 Ill. 584, 95 N. E. 973, Ann. Cas. 1912B, 430; *United States* v. *Graff,* 67 Barb. (N. Y.) 305, affirmed in 4 Hun, 634.

While, in the foregoing cases it is squarely held that the contents of such boxes may be reached in garnishment proceedings, yet, as we shall see, in none of the cases was the order to open the box as broad and sweeping as in the case at bar.

In 12 R. C. L. p. 805, section 35, which was issued in 1916, the law is stated thus:

"In the case of property placed in a safety deposit box, garnishment against the bank which is the lessor of the box is the proper remedy, by the weight of authority, though a slight conflict must be admitted. In such cases the court may cause the box to be opened to determine the garnishee's liability."

In *Trowbridge* v. *Spinning,* supra, it is said:

"Under the broad provisions of this section [speaking of the garnishment statute], the court could inquire into the contents of the box by causing the defendant to be examined as a witness, and might even require an inspection of the contents to the end that effects liable to execution should be delivered to the sheriff."

It certainly would be a reproach to our jurisprudence and to the administration of the law if it were held that the law may successfully be defied by human agencies, and that courts cannot make their processes effective merely because valuable property may be locked and concealed in a steel cafe or receptacle. The court's orders may not be baffled merely because the lessee or owner of a safety deposit box refuses to surrender the key by which the box, in connection with the master key, is opened. If, therefore, there is any method or device available by means of which such box can be opened without destroying them and their contents, the courts have ample power to direct those who have possession and control of such boxes to open them by any available method, and to deliver the contents thereof into the custody of the law as hereinafter more specifically pointed out. Nor can the contention prevail that the court was powerless to order the box opened at the expense of the garnishee. The evidence produced in opposition to the motion to quash the writ is to the effect that modern safety deposit boxes such as the one in question here can be opened by merely drilling a small hole, about the size of a parlor match, into the lock, through which hole the tumblers which are operated by the customers's key may be turned, and the box may then be opened with the master key, which is in possession of the garnishee. It was also made to appear that the time required to open the box by that method is quite short,       3, 4 and that the usual charge of the expert who opens the boxes by that method was two dollars and fifty cents, and that the small hole could be closed with a steel plug prepared for the purpose, and after the hole is plugged the box is just as good as it was originally. If, therefore, a garnishee is required to call in one of the experts to open the box at

an expense of two dollars and fifty cents, that fact, standing alone, would afford no excuse for failing to open the box when ordered to do so by the court. Every garnishee is necessarily put to some inconvenience, and perhaps may be put to some expense in complying with the order of the court. Such expenses are, however, chargeable, as costs, and will be allowed by the court. Such matters are too trivial, however, to be urged as a means of arresting or impeding the due administration of justice. Under our statute no garnishee can be required to answer the interrogatories until he is paid a fee of two dollars unless he expressly waives such payment. Nor is there any merit to the garnishee's contention that the court should not have made the order without notice to it. Neither the garnishee nor the judgment debtor is entitled to notice before the order is made and served requiring the box to be opened.

This brings us to the final objection, which in substance, is that the order of the court was improvidently issued, and that it does not sufficiently protect the interests of the garnishee, etc. We confess that this is the only ground which, to our minds presents serious difficulties. The order was made ex parte and without notice to the garnishee, and was based entirely upon its answer that the defendant Stohl was the lessee of a safety deposit box. While at the hearing on the motion to quash the writ it was made to appear that at least two other persons had access to the box, yet such fact was unknown to the plaintiff and to the court when the order was made. It will be observed that the terms of the order in question are very sweeping. The garnishee is peremptorily ordered to "cause said box to be opened and to deliver the property therein to the sheriff of Salt Lake county, who shall take and keep such of said property and securities as are liable to garnishment and attachment herein." It will be seen that the garnishee was thus required to deliver to the sheriff all of the property and securities which may have been in the box, regardless of whose property it was. True, the order provided that the sheriff should "take and keep such of said property and securities as are liable to garnish-

ment and attachment herein." The sheriff, therefore, was
required to, and legally could, take only such property and
securities as were liable to garnishment under the writ. By
the terms of the order, however, he is made the sole judge
as to what property and securities are "liable to garnish-
ment." As a matter of law, as we have seen, the relationship
between the garnishee and those who have access to the safety
deposit box in question was that of bailee and bailor. In
view that the garnishee owned the box and had the physical
possession and control thereof, it, under the law, is held re-
sponsible for the contents to the same effect as any bailee of
property would be under the circumstances here disclosed.
To that effect are the decisions. See *Lockwood* v. *Manhattan
Storage, etc., Co.*, 28 App. Div. 68, 50 N. Y. Supp. 974,
where it is held that the relation of the company renting a
safety deposit box to its customer is, "that of bailee or de-
positary for hire," and that such a relationship "imposed
upon it the burden of explaining and excusing the nonpro-
duction of articles intrusted to it. * * *" It being made
to appear that at least two others with the defendant Stohl
had access to the box, and that they may have had valuable
articles and securities of their own therein, for which the
garnishee might be required to account as bailee, it is but
just and fair that the court should protect the interests of
the garnishee while enforcing the rights of the judgment
creditor. Even though the fact that others had access to
the box were not made to appear, yet, in view that it is a
matter of common knowledge that safety deposit boxes are
now being generally used for the purpose of safely keeping
valuable and precious articles and securities of all kinds,
and that the head of a family who rents the box may
permit the different members thereof to deposit their     **5, 6**
valuable in the box with his, or that he may permit a
friend to do so, of all of which those who own the safety
deposit boxes are well aware, it becomes the duty of the
courts to protect the interests of all in case it becomes neces-
sary to order one of those boxes to be opened to ascertain
its contents. While it is the duty of all persons in all re-

lations and walks of life to yield prompt obedience to the orders of the courts, which, presumptively at least, are justified by and are based upon the law, yet the same law to which all citizens are required to yield obedience also protects all against preventable injury or loss. In view, therefore, of the uses that at the present time are constantly made of safety deposit boxes, and of which uses the courts, like all others, must take notice, the order in question, in the form it was issued, in one sense was "improvidently issued."

Let us pause a moment to again call attention to the provisions of section 1813, supra. It is there specifically provided that if in exercising the jurisdiction which by law is conferred upon the courts of this state "the course of proceeding be not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the statute or of the Codes of Procedure." Thus there is ample power and authority conferred upon the courts to meet all contingencies, both in enforcing and in protecting the rights and obligations of all. While it is the duty of garnishees to obey the orders of the courts and to aid the officers in executing their orders, judgments, and decrees, yet it is also the duty of the courts and of the officers, at all times and under all circumstances, to protect the rights and interests of garnishees and those who may have business relations with them. If, therefore, an order is made which requires a garnishee to open a safety deposit box for the purpose of reaching its contents, the order should be so framed as to permit the garnishee to be present by its agents or attorneys and to make a complete and accurate inventory of the articles that are found in the box when it is opened. In view of the garnishee's liability, it should be given the right, not only to make such an inventory, but in case the articles bear no earmarks respecting ownership, and the garnishee claims an interest or right to any article found in the box, then the garnishee should be permitted to go before the court and assert its right to such articles, or, in case it has reason to believe, and does believe, that some article or articles belong

to a person or persons other than the judgment debtor
or lessee of the box, the garnishee should be permitted    **7, 8**
to suggest that fact to the court, to the end that the
alleged owner or owners may be notified to come before the
court and make known their rights or interest in or to the
articles.   To follow such a course in no way impedes or in-
terferes with the expeditious and orderly administration of
justice, and can in no way interfere with the plaintiff's rights
in the premises.   While, in pursuing such a course, all the
property belonging to the judgment debtor and in the pos-
session or under the control of the garnishee which is sub-
ject to execution must be surrendered, yet it also safeguards
and protects the rights of the garnishee, as well as those who
may have or claim some rights to or interests in the prop-
erty found in the safety deposit box, without in any way
interfering with the rights of the plaintiff in the action.   It
was not necessary in this case, nor, as we conceive, it is nec-
essary in any case, that notice be given to the judgment
debtor or to any person other than the garnishee that the
safety deposit box be opened for inspection, as herein sug-
gested.   Such an order may be made upon an ex parte ap-
plication, but when it is made it should comply with the con-
ditions herein suggested, to the end that all interests and
rights may be protected.

We are of the opinion, therefore, that the order in
this case is too broad and sweeping, and does not sufficiently
guard and protect the rights of the garnishee or of such per-
sons as may have had access to and may have had property
in the safety deposit box.   Nor is there in any of the
cases to which we have referred anything which leads    **9**
to a different conclusion, unless it be found in the case
of *United States* v. *Graff*, supra.   In that case it was held
to be proper for the sheriff to exclude both parties and their
attorneys or agents while he was opening and inspecting the
contents of an iron safe.   That case was decided forty-five
years ago, since which time the use of safety deposit boxes
by the general public has been greatly increased, and since
which time the law governing safety deposit boxes has been

more fully developed.   But even though that case were of recent origin we should, nevertheless, not feel inclined to follow it in that respect.   In all of the other cases cited there is nothing said 'in the opinions which in any way militates against the views herein expressed.   There is, however, considerable said which is in perfect harmony with the foregoing views.

In *Tillinghast* v. *Johnson,* supra, it is said that under the garnishment statute "the court may take such action, in accordance with proper legal procedure, as will enable it to determine the liability of the garnishee.   This would warrant the court in directing the garnishee to break the seal upon such parcel or to open such safety deposit box and to inspect the contents thereof, that he may disclose the same to the court, and thus enable it to determine as to whether the garnishee is chargeable and to what extent."   What is there said clearly implies that the garnishee, as well as the sheriff, should have access to the contents of the box, and if it claims some interest in the contents or has reason to believe, and does believe, that the property, or some of it, does not belong to the judgment debtor, the garnishee may make that fact known to the court, and the court may then determine the ownership of the property; that is, in the language of the opinion just quoted from, the court may then "determine as to whether the garnishee is chargeable, and to what extent."

Again, in 12 R. C. L., supra, the language of the text is:

"In such cases the court may cause the box to be opened to determine the garnishee's liability."

In order to do that, the garnishee, for its own protection, must be given the right to inspect the property deposited in the box, and to direct the court's attention to such as it may claim, or to such as may be the property of some one other than the judgment debtor.   The garnishee, under no circumstances, will be chargeable with any property except such as is owned by the judgment debtor, or in which he has a beneficial interest which may be reached by the process of garnishment.   Moreover, we think the

course herein outlined should be followed for the officer's protection, as well as for the protection of the garnishee. If a full and accurate inventory is made by the garnishee, the officer would also be protected against false or unjust claims by those who may claim an interest in or right to some of the property found in such box.

We do not wish to be understood, by anything we have hereinbefore said, that when it is made to appear, as in this case, that the judgment debtor has a safety deposit box which is under the control of the garnishee, and an application is made to the court for an order requiring the garnishee to open such box, it would not be proper practice for the court to issue an order requiring the garnishee to appear before the court or judge forthwith and show cause why the box should not be opened and the contents thereof exhibited as hereinbefore stated. In most cases such a course would avoid all misunderstandings. If such a course had been followed in this case we are convinced that this controversy would have been avoided. It would then have been made to appear that the box could be opened without the judgment debtor's key and without force or injury to the box, and no doubt the garnishee would have complied with the court's order to open the box after its objections challenging the jurisdiction of the court had been passed on. As it is, the box still remains unopened, and its contents are still undisclosed.

We are of the opinion, therefore, that while the court was authorized to make the order, yet the order is too broad and sweeping, and does not sufficiently protect the rights of the garnishee or of any other person, if there be such, as may have property or some interest in the property deposited in the safety deposit box.

For the reasons last stated the cause is remanded to the district court of Salt Lake county, with directions to modify the order so as to require the officer to permit the garnishee, by its attorney or agent, or both, to be present when the box is opened, and to take a full and accurate inventory of the contents of the box, and to make any claim as herein sug-

gested to any property or articles found in the box, and, in case any claim is made, to present the same to the court for determination at the earliest possible time consistent with orderly procedure.

In view of the whole record we are of the opinion that one half of the costs of this appeal should be paid by the plaintiff and the other half by the garnishee. Such is the order.

CORFMAN, C. J., and WEBER, GIDEON and THURMAN, JJ., concur.